603 P.2d 959 (1979)
TRANS-WESTERN EXPRESS, LTD., and Capron Truck Co., Plaintiffs-Appellees,
v.
LOCAL UNION NO. 17, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant-Appellant.
No. 78-401.
Colorado Court of Appeals, Div. III.
August 23, 1979.
Rehearing Denied September 20, 1979.
Certiorari Denied December 17, 1979.
*960 Jones, Meiklejohn, Kehl & Lyons, Edward T. Lyons, Jr., Denver, for plaintiffs-appellees.
Criswell & Patterson, John A. Criswell, Englewood, for defendant-appellant.
RULAND, Judge.
Defendant, Local Union No. 17, appeals from an order of the trial court denying its petition to modify a permanent injunction which prohibits Local 17 from picketing Trans-Western Express, Ltd. (TWX). We affirm the order.
The record reflects that Local 17 is a union with approximately 2,400 members. TWX is licensed as a motor common carrier of freight in Colorado. From April of 1970 until April of 1973, Local 17 was the collective bargaining agent for approximately 83 employees of TWX. Some months prior to April of 1973, Local 17 initiated a strike against TWX. In conjunction with the strike, union members picketed TWX, both at its business premises and with ambulatory pickets who followed TWX trucks and who appeared at other business premises where TWX obtained freight. These activities resulted in numerous acts of violence and property damage. As a result, the trial court issued a preliminary injunction in October of 1973 which placed certain limitations on both the number of pickets and their activities.
Following evidentiary hearings, on January 30, 1974, the injunction was made permanent based upon findings as to numerous incidents in which employees of TWX had been assaulted, threatened, and intimidated, and in which property of TWX had been damaged to the extent of $16,280. The trial court also found that Local 17 had violated the provisions of the preliminary injunction. Certain union members were found to be in contempt of court and sentenced. In addition, judgment was entered against Local 17 for the amount of property damage together with certain costs and attorneys' fees. Finally, in its order the trial court noted that if, after a future hearing, it determined that additional acts of violence were committed by union members after January 30, 1974, the court would enjoin all further picketing.
Pursuant to TWX's request, and following additional evidentiary hearings, on April 4, 1974, the permanent injunction was modified so as to ban all picketing by Local 17. This modification was predicated upon findings by the trial court that TWX employees had been assaulted, threatened, and intimidated by union members on various occasions subsequent to January 30, 1974, and that damage had been inflicted on TWX property. The court concluded that the evidence produced at the hearing had established "a climate of coercion, intimidation and violence involved in the picketing of [TWX] . . . which cannot be allowed to continue but which cannot at this time be effectively eliminated if the picketing itself is permitted to continue." No appeal was taken from either the January 30 or the April 4 orders.
On August 9, 1977, Local 17 filed its petition to dissolve the permanent injunction. In conjunction with an evidentiary hearing on the petition, TWX established that between April 1974 and September of 1977, there were sixty-four incidents of violence, *961 intimidation, and property damage committed which were similar to incidents occurring during the strike and which caused approximately $5,000 in damage. Forty-seven of the incidents occurred in 1974, nine in 1975, two in 1976, and six in 1977. Two of the incidents in 1974 involved gunshot wounds suffered by TWX employees at the TWX dock. However, the incidents in 1976 caused no damage, and the damage caused in 1977 amounted to only $219. There was also testimony to the effect that freight bills received by TWX employees through other unionized motor carriers had the term "scab" or "scab bastard" written on them. Finally, three of the employees of TWX who had also been employed during the picketing testified as to their personal fears if the injunction were lifted.
Based upon this evidence, the trial court found that "numerous and continuing incidents of damage to the trucks and trailers of TWX, as well as acts of violence directed at employees of TWX or their property..." had occurred after April 4, 1974, "in circumstances that indicate ... a connection between these incidents and the dispute between the union and TWX... ." The court emphasized the two incidents in August and September of 1974 when two employees of TWX suffered gunshot wounds as well as the fact that the other incidents were similar to incidents which had occurred during the strike. The court construed the evidence as establishing that if picketing were to resume, it would "trigger even more serious acts of violence than have occurred since the injunction was entered."
The court considered and rejected as unpersuasive evidence that no further violence would occur because of a change in leadership of the union and because many of the former employees of TWX who participated in the picketing were no longer active members of the union. The court noted that acts of violence had continued notwithstanding the change in leadership and that the prior strike had been financially supported by the entire union membership, a majority of whom were still active members.
In seeking reversal of the trial court's order, Local 17 contends that the evidence presented by TWX fails as a matter of law to sustain the court's findings and conclusions. Relying upon Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941), Local 17 asserts that TWX must establish a "pattern" of violence and property damage (as opposed to isolated incidents thereof) before continuation of the injunction may be justified against picketing as an exercise of the right of free speech. Local 17 points out that there were only two incidents in 1976, and six in 1977, and that the actual property damage during this period was minimal. Finally, Local 17 notes that the evidence does not conclusively establish that the various incidents in question were actually caused by its members, and that no contempt citations were requested by TWX as a result of these incidents. However, we conclude that the trial court's decision must be affirmed.
We find no Colorado appellate decisions which address the issue in this case. In the federal courts, the scope of appellate review has been firmly established. Once a permanent injunction has been entered, the decision as to whether that injunction should be modified is discretionary with the trial court. See, e. g., United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); Booker v. Special School Dist. No. 1, 585 F.2d 347 (8th Cir. 1978). The ultimate inquiry before the trial court is whether the change in circumstances occurring after entry of the injunction is such that the substantial dangers which the injunction was designed to avoid are now most unlikely to reoccur. See United States v. Swift & Co., supra. We are persuaded that a similar test should apply here where prior to the entry of the permanent injunction the picketing had led to the commission of serious acts of violence and substantial property damage. See Enterprise Window Cleaning Co. v. Slowuta, 273 App. Div. 662, 79 N.Y.S.2d 91 (1948), aff'd, 299 N.Y. 286, 86 N.E.2d 750 (1949).
*962 Hence, even assuming, arguendo, that TWX had the burden of proof, we conclude that it was not incumbent for TWX to establish a continual pattern of violence during the period after the injunction entered. Further, the record need not conclusively establish that the post-injunction incidents were caused by union members. Rather, it is sufficient to establish that the incidents were similar to those which prompted the injunction. See Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., supra.
Local 17 further contends that in reaching its decision the trial court improperly relied upon evidence produced and arguments made by TWX's counsel that Local 17 had no basis to engage in future peaceful picketing because it was no longer the agent of the TWX employees. It is conceded here that Local 17 may picket for informational purposes and regardless of whether it is the bargaining agent for the TWX employees.
While the court commented from the bench at the conclusion of the hearing that Local 17 would not have any reason from an economic standpoint for picketing unless it prevailed at an election to select a bargaining agent, a review of both the oral and written findings of the trial court make clear that this factor had little, if any, bearing on the trial court's decision not to modify the injunction.
Order affirmed.
BERMAN and KELLY, JJ., concur.