**Charles L. STUCKEY, Petitioner,**

v.

**Carol K. STUCKEY, Respondent.**

**No. 87SC291.**

Supreme Court of Colorado,
En Banc.

Feb. 6, 1989.

Rehearing Denied Feb. 27, 1989.

Charles L. Stuckey, Laramie, Wyo., pro se.

No appearance for respondent Carol K. Stuckey.

LOHR, Justice.

We granted certiorari to review the judgment of a district court affirming a permanent injunction issued by a county court forbidding the father of a minor child from having any contact with that child. We elected to limit our review to the narrow issue of whether the county court had jurisdiction to enter such an order. We conclude that it did and therefore affirm the judgment of the district court.

I.

Charles L. Stuckey (father) and Carol K. Stuckey (mother) were formerly married and had a child, Benjamin. Prior to the time this action was commenced, the marriage had been dissolved and the mother had been awarded custody of Benjamin.[1] On December 5, 1986, when Benjamin was fourteen years old, the mother, acting without counsel, filed a verified motion for a

---

1. The sparse record does not reveal what visitation rights the father had with his son.

temporary restraining order in the county court for Jefferson County. She sought to prevent the father from contacting her or Benjamin, and in support of that relief averred that the father by his past threats and conduct had caused her to be fearful of him. She averred that the father was afflicted with organic brain syndrome and outlined several past incidents that had given rise to her fears for her own safety and that of Benjamin. The last such incident took place on November 22, 1986, and consisted of "a comment threatening Ben with physical violence."

The mother appeared on December 5 without counsel and presented testimony at a hearing at which the father was not present or represented by counsel. At the conclusion of the hearing, the county court issued a temporary restraining order preventing the father from "calling, approaching, threatening, molesting, or injuring" the mother or Benjamin. The court relied upon section 14–4–102, 6B C.R.S. (1987), authorizing restraining orders to prevent domestic abuse, as the source of authority to issue the restraining order. The order required the father to appear on December 19, 1986, to show cause why the temporary restraining order should not be made permanent.

On December 19 both the father and the mother appeared without counsel. The court heard evidence, including the testimony of Benjamin, and found that unless permanently restrained, the father was likely to cause harm to the mother and Benjamin and therefore permanently enjoined the father from threatening, molesting, injuring, calling or approaching the mother or Benjamin.

The father appealed, asserting among other things that the county court lacked jurisdiction to restrain him from access to his minor child. The Jefferson County District Court affirmed the permanent injunction, concluding that section 14–4–102 does authorize the relief granted by the county court and reasoning that the statute "does not expressly or impliedly limit the jurisdiction of the District Court which has continuing jurisdiction over custodial matters."

We granted certiorari to review the district court's conclusion that the county court had jurisdiction to issue the permanent injunction insofar as it purports to restrain the father from contact with his minor child.

## II.

### A.

The issue before us is whether as an incident to its power to issue restraining orders to prevent domestic abuse under section 14–4–102, a county court has subject matter jurisdiction to enjoin a father from contacting his minor child who is in the physical and legal custody of the mother pursuant to a decree dissolving the marriage of the father and the mother. It is beyond dispute that a court must have subject matter jurisdiction before it can act. *E.g., People in Interest of Clinton,* 762 P.2d 1381, 1386–87 (Colo.1988); *In re Marriage of Stroud,* 631 P.2d 168, 170–71 (Colo.1981). "Subject matter jurisdiction 'concerns the court's authority to deal with the class of cases in which it renders judgment.'" *Clinton,* 762 P.2d at 1387 (quoting *Stroud,* 631 P.2d at 170).

County courts are courts of limited subject matter jurisdiction. *See* Colo. Const. art. VI, § 1 (county courts are among courts in which judicial power of state is vested); Colo. Const. art. VI, § 17 ("[c]ounty courts shall have such civil, criminal, and appellate jurisdiction as may be provided by law," with certain exceptions). The General Assembly has specified that "[t]he county court shall have no civil jurisdiction except that specifically conferred upon it by law." § 13–6–105(1), 6A C.R.S. (1987). Of particular relevance here, the legislature has specified that the county court shall have no jurisdiction over the following matters:

(c) Matters of dissolution of marriage, declaration of invalidity of marriage, and legal separation;

(d) Matters affecting children, including custody, support, guardianship, adoption, dependency, or delinquency;

. . . .

(f) Original proceedings for the issuance of injunctions, except as provided in section 13–6–104(5) [specifically recognizing jurisdiction of county court to issue orders to prevent domestic abuse [2] under article 4 of title 14, C.R.S.], except as required to enforce restrictive covenants on residential property, and except as otherwise specifically authorized in this article or, if there is no authorization, by rule of the Colorado Supreme Court.

§ 13–6–105, 6A C.R.S. (1987 & 1988 Supp.). One exception to the denial of injunctive power to county courts is found in section 13–6–104(6), 6A C.R.S. (1987), which grants the county court "concurrent original jurisdiction with the district court to issue restraining orders to prevent assaults and threatened bodily harm." If the restraining order is to prevent "domestic abuse," however, the provisions of "article 4 of title 14, C.R.S.," the act concerning restraining orders to prevent domestic abuse, apply. § 13–6–104(5), (6), 6A C.R.S. (1987).

District courts are also among the courts vested with the judicial power of the state. Colo. Const. art. VI, § 1. In contrast to the limitations on county court jurisdiction, however, "district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases" except as the Colorado Constitution otherwise provides. Colo. Const. art. VI, § 9. Our task in the present case is to determine whether the county court has subject matter jurisdiction to restrain a parent from contacting his minor child, and if so to determine the permissible scope of that jurisdiction so as

not to intrude into areas where by statute jurisdiction is specifically denied to the county court or committed to the exclusive jurisdiction of the district court.

### B.

We begin with the statute upon which the county court relied in issuing the permanent injunction forbidding the father from contacting his son, Benjamin. The General Assembly in 1982 enacted sections 14–4–101 to –105, 6B C.R.S. (1987) (Domestic Abuse Act), concerning emergency protection orders and restraining orders to prevent domestic abuse. The Domestic Abuse Act defines "domestic abuse" as "any act or threatened act of violence which is committed by an adult [i.e., an individual eighteen years of age or older] or emancipated minor against another adult or emancipated minor who is a current or former relation or who is living in the same domicile." § 14–4–101(2), 6B C.R.S. (1987). The county court and district court are given specific concurrent authority to issue restraining orders to prevent domestic abuse, § 14–4–102(1), and to issue emergency protection orders for that same purpose, § 14–4–103.[3]

To ensure that violence within a family can be promptly curbed, the Domestic Abuse Act provides for a judge to be available in each judicial district to issue emergency protection orders by telephone at all times when the courts are closed. § 14–4–103(1). During these times a judge may issue a written or verbal ex parte emergency protection order upon the asser-

**2.** As noted later in this opinion, "domestic abuse" means "any act or threatened act of violence which is committed by an adult or emancipated minor against another adult or emancipated minor who is a current or former relation or who is living in the same domicile." § 14–4–101(2), 6B C.R.S. (1987).

**3.** By the same legislative bill that created the Domestic Abuse Act, the General Assembly amended § 13–6–104(5), (6), 6A C.R.S. (1973), containing exceptions to the denial of injunctive power to the county courts, to grant the county courts jurisdiction to issue restraining orders to prevent domestic abuse. Ch. 67, secs. 2, 3, § 13–6–104(5), (6), 1982 Colo.Sess.Laws 299, 301. Prior to the enactment of the Domestic

Abuse Act, the county courts had been authorized to issue only restraining orders to prevent assaults and threatened bodily harm. § 13–6–104(6), 6A C.R.S. (1973). Thus, the 1982 amendments had the effect of distinguishing domestic abuse from abuse that can arise outside of the family setting. However, the legislature did not indicate that the procedures outlined in C.R.C.P. 365 to be followed by county courts in issuing temporary or permanent injunctive relief. or the scope of that relief should vary according to whether the relief is sought to prevent assault or threatened bodily harm pursuant to § 13–6–104(6) or to prevent domestic abuse pursuant to the Domestic Abuse Act.

tion by a peace officer of "reasonable grounds to believe that an adult is in immediate and present danger of domestic abuse, based upon an allegation of a recent incident of actual domestic abuse or threat of domestic abuse." § 14–4–103(2). An oral order must be supported by a judicial finding that "an imminent danger in close proximity exists to the life or health of one or more persons." § 14–4–103(5). The officer obtaining such a verbal order must reduce it to writing, sign it, and include ,a statement of "the grounds for the order asserted by the officer." § 14–4–103(5).

The emergency protection order may extend protection to children of either of the parties as well as to an adult. Specifically, such an order may include provisions:

(a) Restraining a party from threatening, molesting, or injuring any other party or minor children of either of the parties;

(b) Excluding a party from the family home or from the home of another party upon a showing that physical or emotional harm would otherwise result;

(c) Awarding temporary care and control of any minor children of a party involved.

§ 14–4–103(3). An emergency protection order expires no later than the conclusion of the judicial business day next following the issuance of the order, unless otherwise continued by the court. § 14–4–103(4). As to a continued order, the party restrained may move for its dissolution or modification and may obtain a prompt hearing after notice to the party who obtained the order. *Id.* Law enforcement agencies are authorized to enforce emergency protection orders. § 14–4–103(6).

The statutory provisions for issuing restraining orders to prevent domestic abuse when courts are in session do not contain the detail with which the courts' powers to issue emergency protection orders are delineated. *See* § 14–4–102. The provision relating to restraining orders simply gives the county and district courts concurrent authority "to issue restraining orders to prevent domestic abuse whether or not such relief could be obtained in a domestic relations action filed in a district court." § 14–4–102(1). The statute contains no additional detail concerning the grounds for relief, the type of relief to be provided, or the duration of such an order. In particular, section 14–4–102 makes no specific mention of providing protection for the minor children of the parties. Construing the Domestic Abuse Act as a whole, however, we conclude that the relief available as part of a restraining order is at least as extensive as that specified for an emergency protection order. Absent a specific expression of contrary purpose, there is no reason to believe that the General Assembly intended to grant courts more latitude when issuing ex parte emergency protection orders than when issuing restraining orders after a full hearing. *See generally* § 2–4–201(1)(c), 1B C.R.S. (1980) (legislature is presumed to have intended a just and reasonable result); *Ingram v. Cooper,* 698 P.2d 1314, 1315 (Colo.1985) (same). Therefore, even though "domestic abuse" is defined to extend only to acts or threatened acts of violence committed by and against adults and emancipated minors, we conclude that the same forms of relief authorized to be included in an emergency protection order issued under section 14–4–103 are also available for longer term restraining orders issued under section 14–4–102. These forms of relief include provisions for the protection of minor children of the parties. *See* § 14–4–103(3).

### C.

The father argues that to construe the Domestic Abuse Act so broadly as to permit county courts to prevent a parent from contacting his child trenches on the exclusive jurisdiction of district courts in custody matters. *See, e.g.,* § 19–1–104(1)(c), 8B C.R.S. (1988 Supp.) (juvenile court[4] has exclusive original jurisdiction to determine the legal custody of any child within the jurisdiction of that court under § 19–1–104

---

**4.** "Juvenile court" is defined in the Colorado Children's Code, §§ 19–1–101 to 19–6–106, 8B C.R.S. (1988 Supp.), to mean "the juvenile court of the city and county of Denver or the juvenile division of the district court outside of the city and county of Denver." § 19–1–103(17), 8B C.R.S. (1988 Supp.).

unless otherwise provided by law); § 14–10–123, 6B C.R.S. (1987) (providing for means of commencing child custody proceedings in the district court). The father also urges that such a construction of the Domestic Abuse Act is inconsistent with the denial of jurisdiction to county courts in "[m]atters affecting children, including custody, support, guardianship, adoption, dependency, or delinquency," § 13–6–105(1)(d), 6A C.R.S. (1987). When the scope of the relief that can be awarded by the county court under the Domestic Abuse Act is properly understood, however, we do not believe that the father's arguments have merit.

We recognize that the legislature has expressly denied county courts subject matter jurisdiction in matters affecting children. *See* § 13–6–105(1)(d). We also acknowledge that the legislature has specifically granted the district courts exclusive jurisdiction in particular matters concerning children. For example, the Colorado Children's Code, §§ 19–1–101 to 19–6–106, 8B C.R.S. (1988 Supp.) (Children's Code), provides that the juvenile court is to have "exclusive original jurisdiction" in proceedings concerning any child who is neglected or dependent or to determine the legal custody of such a child. § 19–1–104(1)(b), (c), 8B C.R.S. (1988 Supp.). The Children's Code also specifies that the juvenile court can issue temporary protective custody orders with respect to dependent or neglected children. §§ 19–3–204, 19–3–401, 8B C.R.S. (1988 Supp.). The Children's Code further authorizes the juvenile court to issue an order of protection in assistance of, or as a condition of, any decree authorized by the code. § 19–1–114, 8B C.R.S. (1988 Supp.).

The Uniform Dissolution of Marriage Act, §§ 14–10–101 to 14–10–133, 6B C.R.S. (1987 & 1988 Supp.), provides another source of statutory authority for exclusive district court jurisdiction in matters concerning children. Child custody proceedings initiated by petitions for dissolution of marriage or legal separation are exclusively within the jurisdiction of the district courts. § 14–10–123, 6B C.R.S. (1987).[5] Once a child custody proceeding has been initiated, the district court has jurisdiction to provide injunctive relief to regulate contact among the parties including "[e]njoining a party from molesting or disturbing the peace of the other party or of any child." § 14–10–108(2)(b), 6B C.R.S. (1987); *see also* § 14–10–108(3), (4), (5), (6), 6B C.R.S. (1987).[6] Custody proceedings result in determinations of custody, *see* § 14–10–124, 6B C.R.S. (1987), and delineation or denial of visitation rights, *see* § 14–10–129, 6B C.R.S. (1987). Custody determinations and visitation provisions are subject to modification in district court proceedings pursuant to statutory procedures and criteria. §§ 14–10–131, 14–10–131.5, 14–10–129, 6B C.R.S. (1987 & 1988 Supp.).

We believe that a construction of the Domestic Abuse Act is available that will obviate conflict between the remedies available thereunder and the traditional exclusive jurisdiction of district courts in juvenile and domestic relations matters. Prior to the enactment of the Domestic Abuse Act, no single procedure was explicitly provided to restrain intra-family violence directed at both adults and minor children. Although such relief could be obtained in the county court as to adults only, in the juvenile court as to delinquent or dependent or neglected children only, and through the Uniform Dissolution of Marriage Act

---

5. Although § 14–10–123 does not use the term "exclusive jurisdiction," *cf.* § 19–1–104(1)(c) (granting juvenile court "exclusive jurisdiction" to determine legal custody of a delinquent or dependent or neglected child except as otherwise provided by law), no court other than the district court would be competent to adjudicate child custody proceedings initiated by petitions for dissolution of marriage or legal separation. *See* § 13–6–105(1)(c), (d) (denying county courts jurisdiction in matters of marital dissolution, legal separation, and child custody).

6. In addition, upon the filing and service of a petition for dissolution of marriage or legal separation in district court, an automatic temporary injunction takes effect and continues until a final decree issues. § 14–10–107(4)(b)(I), 6B C.R.S. (1987). This automatic temporary injunction includes a provision restraining both parties from removing their minor children from the state without the consent of the other party or an order of court. *Id.*

when a dissolution of marriage action or other custody proceeding had been initiated, there was no single statutory procedure affording protection to both adults and children in family disturbances where initiation of dissolution of marriage proceedings was not desired.[7] More importantly, the restraint of domestic violence necessitates a rapid response to a possibly volatile situation whenever it occurs, and no provisions existed for obtaining restraining orders promptly enough to provide effective immediate relief to both adults and children involved in family disturbances. It was to fill these voids that the Domestic Abuse Act was adopted. *See* Walker, *Legislative Activities in Family Law*, 11 Colo. Law. 1560, 1567 (1982). The Act had the effect of specifying two forums, the county court and district court, in which relief from domestic abuse might be sought at any time of the day or night, and had the additional benefit of consolidating into a single set of procedures the statutory authority for protecting both adults and children in situations involving domestic abuse. There is no indication, however, that the legislature intended by enactment of the Domestic Abuse Act to intrude on the traditional jurisdiction of the district courts in juvenile and domestic relations matters to make long-term provisions for custody or visitation rights concerning minor children.

For the foregoing reasons, we conclude that emergency protection orders and restraining orders issued under §§ 14–4–102 and –103 implicitly are subject to modification or termination in proceedings under the Colorado Children's Code, the Uniform Dissolution of Marriage Act, and other traditional bases of district court jurisdiction over the restrained conduct. Once the issues concerning the appropriateness of contacts between the parties have been posed in proceedings under these statutes, resolution of custody, visitation, and permissible contact between parents and between parent and child can be evaluated and resolved in light of full information, including the information that led up to the issuance of the emergency protection order or restraining order under the Domestic Abuse Act.[8]

### III.

Turning to the facts of the present case, we conclude that the county court had jurisdiction to enjoin the father from contacting his minor son. The allegations in the mother's verified motion for temporary restraining order that the father threatened violence to her and her minor child, and the evidence presented in the hearings on the appropriateness of injunctive relief supported a finding of domestic abuse as defined in section 14–4–101(2). The provisions of sections 14–4–102 and –103 therefore provided the jurisdictional basis for the relief granted by the county court.

This relief is consistent with the provisions of section 13–6–105 denying jurisdiction to the county court as to certain matters. With respect to the denial of the power to issue injunctions, a specific exception is recognized for injunctions authorized by the Domestic Abuse Act. § 13–6–105(1)(f); § 13–6–104(5). By enactment of the Domestic Abuse Act the General Assembly has affirmatively granted county courts jurisdiction to provide injunctive relief, including protection for minor children, in domestic abuse situations.

---

7. Upon a proper showing, relief may have been available in district court under C.R.C.P. 65. In addition, a threatening party can be arrested if that party's actions give rise to probable cause to believe a crime has been committed, and a mandatory restraining order takes effect preventing a person charged with a crime from "harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged." § 18–1–1001, 8B C.R.S. (1986). However, not all dangerous domestic violence situations involve criminal conduct.

8. A restraining order issued under § 14–4–102 can also be modified or dissolved by the court that entered it upon a showing that the conditions that justified its issuance have changed to such an extent that the relief originally granted is no longer necessary or appropriate. *See, e.g., United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *Securities & Exchange Commission v. Thermodynamics, Inc.,* 464 F.2d 457, 460–61 (10th Cir.1972); *Berman v. Denver Tramway Corp.,* 197 F.2d 946, 950 (10th Cir.1952); *Trans–Western Express, Ltd. v. Local Union No. 17,* 43 Colo.App. 158, 161, 603 P.2d 959, 961 (1979).

§ 14-4-102; § 14-4-103. Moreover, the denial of county court jurisdiction in matters affecting children, § 13-6-105(1)(d), was amended by the same legislative bill that enacted the Domestic Abuse Act to permit county courts to exercise jurisdiction to the extent authorized in the Domestic Abuse Act. *See* § 13-6-105(1)(f) and n. 3, above. The Domestic Abuse Act itself provides that restraining orders to prevent domestic abuse can be issued notwithstanding the availability of such relief in a domestic relations action filed in district court. § 14-4-102(1), 6B C.R.S. (1987).

Furthermore, as discussed earlier the relief accorded here does not prevent the district court from determining matters of custody, visitation, and permissible contact between the parties should such matters be properly presented in proceedings under the Colorado Children's Code, the Uniform Dissolution of Marriage Act, or some other source of district court jurisdiction.

We affirm the judgment of the district court.

ERICKSON, J., dissents and KIRSHBAUM, J., joins in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. The record here denies us an opportunity to review fairly the important issue which the majority addresses. Carol K. Stuckey, appearing *pro se*, filed an *ex parte* motion for a temporary restraining order on December 5, 1986, asserting that her former husband, Charles L. Stuckey, has suffered from a mental illness described as Organic Brain Syndrome for several years. The motion described several incidents of Charles's behavior that caused her to be very fearful of him. The events allegedly occurred in December 1974, January 1975, August 1982, and in 1985. She also averred that Charles had been involved in an incident which resulted in physical violence. Her motion, which was sworn to before the clerk, may have been supported by testimony, but the testimony, if such exists, was never transcribed, was not before the district court on appeal, and is not before this court. Nothing further appears in the record to show that an emergency existed which required a temporary restraining order to be entered on December 5, 1986.

Following the entry of the temporary restraining order, the Stuckeys appeared without counsel on December 19, 1986, at a hearing to determine whether the restraining order should be made a permanent injunction. Charles Stuckey subpoenaed three witnesses for the hearing. After he pitifully attempted to call witnesses to establish the reasons why a permanent injunction should not be issued, the county judge took limited testimony and then issued a permanent injunction. The only brief in this court was filed by Charles Stuckey, *pro se*, which is of little assistance in resolving a difficult issue. Carol Stuckey has not filed a brief or entered an appearance.

In my view, the county court had authority to issue the temporary restraining order pursuant to section 14-4-102, 6B C.R.S. (1987), but does not have authority to enter a permanent injunction depriving the father of any visitation rights he might have had. The Domestic Abuse Act, sections 14-4-101 to -105, 6B C.R.S. (1987), cannot be construed under the facts before us to permit the county court to issue a permanent injunction that modifies and changes the district court's visitation and custody orders. As such, I would interpret the phrase "restraining orders" in section 14-4-102(1) to refer only to temporary restraining orders to be issued in an emergency situation for a brief duration.

Under section 13-6-105, 6A C.R.S. (1987 & 1988 Supp.), the county court is denied jurisdiction over "[m]atters affecting children, including custody, support, guardianship, adoption, dependency, or delinquency." § 13-6-105(1)(d). In my view, this express exclusion of jurisdiction cannot be reconciled with the majority's conclusion that county courts have jurisdiction to enter both temporary and permanent injunctions. Permanent injunctions frequently implicate "matters affecting children," such as parental visitation and custody rights. These rights deserve the utmost protection and should not be permanently

altered by a court that was neither designed nor intended to do so. Whether the term "restraining orders," as contained in section 14–4–102, refers to temporary restraining orders or permanent injunctions must be interpreted in view of the fact that county courts are not designed to entertain cases involving the parent/child relationship. § 13–6–105(1)(d). Because an order permanently barring a father from seeing his son is a matter "affecting children," the county court does not, under the facts before us, have jurisdiction to issue a permanent restraining order. *Id.* I would limit the county court's jurisdiction accordingly.

Here, the fourteen-year-old son rubber stamped his mother's allegations in the motion for a restraining order by stating that they were true, but testified that his father had never threatened or abused him. The mother claimed that she was in fear for her and her son's safety. The permanent injunction prohibits the father from contacting his son. Therefore, if the father were to obtain an order from the district court that entered the custody order, and presumably visitation orders, he would then have to seek an order from the county court modifying the injunction before he could again seek to contact his son. In this case, the county court's order permanently deprived the father of visitation rights. In my view, the majority opinion improperly permits section 14–4–102 to be utilized by a county court to modify visitation and custody rights established by the district court in dissolution proceedings.

I would reverse and remand to the district court for a hearing on the permanent injunction.

I am authorized to say that KIRSHBAUM, J., joins in this dissent.