David LANGLOIS and Barbara Langlois, Plaintiffs–Appellees and Cross–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EL PASO, Defendant–Appellant and Cross–Appellee.

No. 02CA0607.

Colorado Court of Appeals, Div. I.

Sept. 11, 2003.

Hanes & Schutz, P.C., Timothy J. Schutz, Elana L. Sabovic, Colorado Springs, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Vaughan & Demuro, Gordon L. Vaughan, Sara Ludke Cook, Colorado Springs, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge KAPELKE.

Defendant, the Board of County Commissioners of the County of El Paso, appeals the judgment entered by the trial court granting injunctive relief in favor of plaintiffs, David Langlois and Barbara Langlois. The Board also challenges the trial court's denial of its motion to dismiss or for summary judgment on plaintiffs' breach of contract claim. By cross-appeal, plaintiffs challenge the dismissal of their trespass and nuisance claims against the Board and the directed verdict for the Board on their breach of contract claim. We affirm in part and reverse in part.

This action arises from the flooding of plaintiffs' property caused by a drainage culvert built by the Ridge at Fox Run, LLC (RFR) at a new subdivision.

As a condition to the Board's approval of RFR's final plat of the subdivision, the Board and RFR entered into a Subdivision Improvements Agreement (SIA), as provided for by § 30–28–137, C.R.S.2002, and the El Paso County subdivision regulations. Under the SIA, RFR was required to provide collateral in the form of a letter of credit to guarantee its performance in constructing improvements in accordance with specifications. The Board was to release the collateral as RFR completed the improvements to the Board's satisfaction.

RFR installed a culvert that was not included on the drainage plan for the subdivision. The culvert directed runoff from storms across plaintiffs' property, causing repeated flooding. Despite plaintiffs' complaints about the culvert's causing flooding, the Board accepted the drainage improvements and released the collateral to RFR.

Plaintiffs brought this action against RFR and the Board, asserting claims for trespass, nuisance, and breach of the SIA. They also sought an award of damages and injunctive relief mandating removal of the culvert and prohibiting the Board and RFR from trespassing on their property.

Shortly after the action was filed, the Board and RFR jointly constructed a new drainage system that routed storm water away from the culvert. Additionally, a box with a steel grate on the top was constructed over the culvert. The box prevents water from entering the culvert unless the water level becomes high enough to spill over the top of the box, which would occur if the new drainage system were to become blocked or if there were a hundred-year storm.

The Board filed a motion to dismiss or for summary judgment on each of plaintiffs' claims. In its motion, the Board argued, inter alia, that it was immune from liability for plaintiffs' claims pursuant to the Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.2002.

The trial court granted the motion to dismiss as to plaintiffs' trespass and nuisance claims, but denied it as to the breach of contract claim.

At trial, at the close of plaintiffs' case-in-chief, the Board moved for dismissal of the injunctive relief claim and for entry of a

directed verdict on the breach of contract claim. The court denied the motion to dismiss and granted the motion for directed verdict.

The jury returned a verdict for plaintiffs on their trespass and nuisance claims against RFR, and the court granted an injunction requiring the Board to remove or seal the culvert. The court entered judgment accordingly.

## I. Standing

■ Because it is a threshold issue, we first address the Board's contention that the trial court erred in finding that plaintiffs had standing to bring the claim for breach of the SIA. We reject the contention.

The SIA provides that "any purchaser of any lot in the [subdivision] shall have the authority to bring an action for injunctive relief to enforce any ... provision of this Agreement and for damages arising out of failure to adhere to any such ... provision of this Agreement."

Section 30–28–137(4), C.R.S.2002, contains provisions nearly identical with those of the SIA: "[A]ny purchaser of any lot ... in a recorded plat ... shall have the authority to bring an action for injunctive relief to enforce any ... provision of a subdivision improvements agreement and for damages arising out of failure to adhere to any such ... provision of a subdivision improvements agreement."

Under the plain language of both the SIA and § 30–28–137(4), the purchaser of a lot has standing to bring an action for damages and injunctive relief for breach of the SIA. Neither the SIA nor the statute limits such actions to claims against the developer or precludes contract claims against the contracting governmental entity.

Thus, the trial court correctly held that plaintiffs, as purchasers of a lot in the new development, had standing to assert a claim against the Board for alleged breach of the SIA.

We next address the contentions raised by plaintiffs in their cross-appeal.

## II. Dismissal of Trespass and Nuisance Claims

■ Plaintiffs contend that the trial court erred in dismissing their trespass and nuisance claims against the Board as barred by the CGIA. We disagree.

Section 24–10–106(1)(f), C.R.S.2002, provides that sovereign immunity is waived by a public entity in an action for injuries resulting from the operation or maintenance of any public water facility or sanitation facility. However, § 24–10–106(4), C.R.S.2002, limits the scope of such a waiver:

No rule of law imposing absolute or strict liability shall be applied in any action against a public entity ... for an injury resulting from a dangerous condition of, or the operation and maintenance of, a public water facility or public sanitation facility. *No liability shall be imposed in any such action unless negligence is proven.*

(Emphasis added.)

In *Lawrence v. Buena Vista Sanitation District*, 989 P.2d 254, 256 (Colo.App.1999), a division of this court held that "in actions for injuries resulting from a dangerous condition of, or the operation and maintenance of, a public water facility or public sanitation facility, § 24–10–106(4) operates to bar claims that would otherwise allow recovery without a showing of negligence."

Plaintiffs urge that *Lawrence* was wrongly decided and that we should therefore decline to follow it. However, because we agree with both the analysis and holding in that case, we find it dispositive here.

We reject plaintiffs' argument that the holding in *Lawrence* was incorrect because the division applied an erroneous rule of interpretation. Specifically, they maintain that the division in *Lawrence* construed the exceptions to governmental immunity narrowly, rather than liberally, as required under *Corsentino v. Cordova*, 4 P.3d 1082 (Colo. 2000). While we agree that the opinion in *Lawrence* refers to a rule of interpretation that is contrary to that approved in *Corsentino*, the division's holding in *Lawrence* was not based on that incorrect rule, but instead, on application of the plain language of § 24–

10–106(4). Accordingly, we find no error here.

### III. Directed Verdict on Contract Claim

■ Plaintiffs next contend that the trial court erred in granting a directed verdict for the Board on their breach of contract claim. Again, we disagree.

■ Directed verdicts are not favored. *Flores v. Am. Pharm. Servs., Inc.*, 994 P.2d 455 (Colo.App.1999). A motion for directed verdict may be granted only where the evidence, considered in the light most favorable to the nonmoving party, compels the conclusion that reasonable people could not disagree and that no evidence, or legitimate inference from the evidence, has been presented upon which a jury verdict against the moving party could be sustained. *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967).

Here, the trial court granted a directed verdict based on its conclusion that the SIA did not impose any legal obligation on the Board to withhold funds from the letter of credit or to bring an action against RFR to enforce the terms of the SIA.

As relevant here, the SIA provided that in the event the Board determined that any improvement was not constructed in substantial compliance with specifications, the Board "shall furnish [RFR] a list of specific deficiencies and *shall be entitled to withhold* collateral sufficient to ensure such substantial compliance" (emphasis added). The SIA also stipulated that in such event the Board "*may* withdraw and employ from the deposit of collateral such funds as may be necessary to construct the improvements in accordance with the specifications" (emphasis added). The SIA thus gave the Board the right to withhold the collateral, but did not impose any duty to do so.

Similarly, while another provision of the SIA gave the Board the *authority* to bring an action for injunctive relief or damages for RFR's failure to adhere to provisions of the agreement or the plat, it did not impose any *obligation* on the Board to file such an action. Accordingly, the trial court did not err in determining that plaintiffs had failed to show a breach of contract by the Board and in granting a directed verdict for the Board on that claim.

In view of our holding on this issue, we need not address the Board's contention that the trial court erred in finding that plaintiffs' breach of contract claim was not barred by the CGIA.

### IV. Permanent Injunction

The Board contends that plaintiffs failed to establish the requirements for permanent injunctive relief and that the trial court therefore abused its discretion in granting such relief. We agree.

■ The grant or denial of injunctive relief lies within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. *Scott v. City of Greeley*, 931 P.2d 525 (Colo.App. 1996).

■ Here, in granting the injunction, the trial court addressed the requirements for a *preliminary* injunction set forth in *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo. 1982). The party seeking such relief must demonstrate that: (1) there is a reasonable probability of success on the merits; (2) there is a danger of real, immediate, and irreparable injury that may be prevented by injunctive relief; (3) there is no plain, speedy, and adequate remedy at law; (4) the granting of an injunction will not disserve the public interest; (5) the balance of equities favors the injunction; and (6) the injunction will preserve the status quo pending a trial on the merits.

The trial court noted, "In the context of this request for permanent injunctive relief, the Court finds criteria 2 through 5 to be the most germane."

■ The requirements for a permanent injunction are essentially the same as those for a preliminary injunction; however, the applicant must show actual success on the merits rather than merely a reasonable probability of success. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404, 94 L.Ed.2d 542 (1987).

A party seeking a permanent injunction must show that: (1) the party has achieved actual success on the merits; (2) irreparable harm will result unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause to the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175 (10th Cir.2003)(citing *Amoco Prod. Co. v. Vill. of Gambell, supra* ).

In granting permanent injunctive relief against the Board, the court did not make any finding as to whether plaintiffs had demonstrated actual success on the merits. Although plaintiffs were successful on their trespass and nuisance claims against RFR, that company was no longer the owner of the culvert and could therefore not be enjoined to remove or plug it.

As discussed above, we have concluded that the trial court did not err in dismissing plaintiffs' tort claims against the Board and in entering a directed verdict for the Board on plaintiffs' breach of contract claim. Thus, plaintiffs were wholly unsuccessful on their claims against the Board.

Because plaintiffs did not demonstrate actual success on the merits as to any of their claims against the Board, we conclude that the trial court abused its discretion in granting a permanent injunction requiring the Board to plug or remove the culvert.

That part of the judgment that granted permanent injunctive relief against the Board is reversed. In all other respects the judgment is affirmed.

Judge TAUBMAN and Judge LOEB concur.