24CA1226 Cortez v Castro 08-28-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1226
Jefferson County District Court No. 23CV30108
Honorable Philip J. McNulty, Judge

Jonathon Alexander Cortez,

Plaintiff-Appellant,

v.

Arianna Castro,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 28, 2025

Gordon Legal Malpractice PLLC, Paul Gordon, Denver, Colorado, for
Plaintiff-Appellant

Wheeler Law, P.C., Karen H. Wheeler, Chris M. Bevier, Greenwood Village,
Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Jonathon Alexander Cortez, appeals the judgment entered after the district court granted a directed verdict in favor of defendant, Arianna Castro, on both liability and damages. We reverse the directed verdict and remand the case for a new trial.

## I.    Background

¶ 2    This case arises from an accident involving a motorcycle and a car. Cortez, riding a motorcycle, and Castro, driving a car, were travelling in opposite directions down a road with a left turn lane and two through lanes on each side. Castro stopped at an intersection and turned left in front of Cortez, resulting in Cortez crashing his motorcycle into her car and sustaining personal injuries.

### A.    Evidence Presented at Trial

¶ 3    Cortez sued Castro for negligence, and the case went to trial before a jury. During Cortez's case-in-chief, the following evidence was presented.

¶ 4    Cortez testified that he did not have a clear recollection of the accident, but a camera mounted to his handlebars captured the collision. That footage showed him driving at a high rate of speed down the left turn lane toward a car that was waiting to make a

1

turn. As he neared the stopped car, he quickly weaved to the right, into the left through lane, to go around it. Castro turned left into the intersection ahead of Cortez, obstructing the through lane that he was now in, and he crashed into the front of Castro's car. And in a 911 call shortly after the crash, Castro stated that she "did not see [Cortez] coming," and that she was at fault.

¶ 5 On the other hand, Castro testified that before the accident, she "came to a complete stop in the left turn lane" and "the left through lane was clear." When a "car that was stopped in the right through lane waved [her] through," she "made sure that it was safe to go" before beginning her turn. But she "heard a honk" immediately after starting to turn and "took [her] foot off the gas and put it on the brake to turn to see where the sound came from," at which point Cortez crashed into her car.

¶ 6 Castro also introduced additional footage from Cortez's handlebar-mounted camera that captured approximately ten minutes leading up to the accident. This footage showed Cortez

2

driving his motorcycle recklessly, engaging in a road rage incident with another driver, and running a red light.[1]

¶ 7    Cortez testified that he sustained the following injuries in the accident:

> I broke basically all my ribs, eight ribs in my upper right back. Broke my pelvis. I broke my hip in two spots. Punctured and collapsed lung. Visual injuries like bruises and scrapes and scratches. . . . I hit my whole right side, so basically everything on the right side of my body was broken, but it tore my abdominal wall, so I had a hernia.

Cortez, his mother, and one of his friends each testified about the ways Cortez's life has been negatively impacted by the accident.

¶ 8    As to his medical expenses, Cortez testified that he believed he had been billed "like 192, 195 thousand, somewhere around there." However, no medical records, bills, or further testimony about Cortez's treatment were admitted at trial because the district court excluded Cortez's medical expert due to a disclosure violation.

---

[1] Although this footage is not included in the appellate record, Cortez was extensively cross-examined about it.

## B. Directed Verdict

¶ 9 After Cortez rested his case-in-chief, Castro moved for a directed verdict. In an oral ruling, the district court concluded that a directed verdict was appropriate on both liability and damages.

¶ 10 In addressing liability, the court found that (1) the evidence established that Cortez was speeding, "weaving in and out of traffic, all around cars, turning around on [the road] at one point and going back in the other direction" and was "straddling the left-turn lane" before the accident; (2) a case discussing the "look but fail to see" rule, *Hernandez v. Ratliff*, 470 P.2d 579, 580 (Colo. 1970), was applicable here; and (3) there was "insufficient evidence in this case to submit . . . the issue of negligence" to the jury.

¶ 11 Turning to damages, the court found that "there [wa]s no competent evidence as to damages" because "[t]here's been no medical testimony in this case at all" and "[t]he only testimony regarding damages was Mr. Cortez saying he thinks his medical bills were around $190,000."

¶ 12 Accordingly, the court entered judgment in favor of Castro.

## II.    Analysis

¶ 13    Cortez contends that the district court erred by entering a directed verdict on his claim as to (1) liability and (2) damages. We agree.

### A.    Standard of Review and Applicable Law

¶ 14    We review de novo the district court's ruling on a motion for a directed verdict, *Argo v. Hemphill*, 2022 COA 104, ¶ 19, applying the same standards as the district court, *State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 25.

¶ 15    C.R.C.P. 50 authorizes a party to move for a directed verdict on a claim at the close of the evidence offered by the opposing party or at the close of all the evidence. But "[d]irected verdicts are not favored." *Langlois v. Bd. of Cnty. Comm'rs*, 78 P.3d 1154, 1157 (Colo. App. 2003). A district court may grant such relief "only if the evidence, considered in the light most favorable to the nonmoving party, 'compels the conclusion that reasonable persons could not disagree and that no evidence, or legitimate inference therefrom, has been presented upon which a jury's verdict against the moving party could be sustained.'" *Goddard*, ¶ 25 (quoting *Burgess v. Mid-Century Ins. Co.*, 841 P.2d 325, 328 (Colo. App. 1992)).

Accordingly, the court should deny a motion for a directed verdict "unless there is no evidence that could support a verdict against the moving party on the claim." *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 10.

¶ 16    "[T]he question of whether a person was negligent — that is, whether she breached her duty of care by acting unreasonably under the circumstances — is ordinarily a question of fact for the jury." *Hesse v. McClintic*, 176 P.3d 759, 764 (Colo. 2008). "Unless the facts are undisputed and reasonable minds can draw only one conclusion from them, the determination of negligence" must be made by the jury. *Sharp v. Kaiser Found. Health Plan of Colorado*, 710 P.2d 1153, 1155 (Colo. App. 1985), *aff'd*, 741 P.2d 714 (Colo. 1987).

¶ 17    "As a general rule, a party is entitled to recover for damages that naturally and probably result from the negligence of another." *Hodge v. Matrix Grp., Inc.*, 2022 COA 4, ¶ 13. To do so, the party must prove the damages with reasonable certainty. *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 55. But "[t]he rule which precludes recovery of uncertain and speculative damages applies only where the fact of damages is

uncertain, not where the amount is uncertain." *Cope v. Vermeer Sales & Serv. of Colo., Inc.*, 650 P.2d 1307, 1309 (Colo. App. 1982) (citing *Peterson v. Colo. Potato Flake & Mfg. Co.*, 435 P.2d 237, 239 (Colo. 1967)). Once the fact of damages is established, the party need not prove the measure of damages with mathematical certainty. *Hoff & Leigh, Inc. v. Byler*, 62 P.3d 1077, 1079 (Colo. App. 2002). Rather, the party must only "provide evidence sufficient to allow a reasonable estimate of the loss sustained." *Id.*

## B. Liability

¶ 18 The district court granted a directed verdict on liability based on (1) "insufficient evidence" that Castro acted negligently; (2) evidence that Cortez was speeding and driving recklessly before and during the accident; and (3) *Ratliff*, 470 P.2d at 580, a case discussing the "look but fail to see" rule. We conclude that these bases cannot sustain the court's judgment.

¶ 19 First, Cortez presented the following evidence to support his contention that Castro acted negligently by making the left turn:

- Footage from Cortez's handlebar-mounted camera showed him changing lanes from the left turn lane to the left through lane at roughly the same time Castro begins

her left turn but *before* Castro's car obstructs the left through lane. The video suggests that Cortez may have been visible when Castro started her turn.

- When Castro called 911 after the accident, she stated, "I did not see [Cortez] coming," "It was my fault," and "I'm at fault." While these admissions do not necessarily establish that Cortez was solely responsible for the accident, *see Huntoon v. TCI Cablevision of Colo., Inc.,* 969 P.2d 681, 688 (Colo. 1998), they are evidence that a reasonable jury could consider in concluding that Castro was negligent.

- Castro testified that she "heard a honk" while making the left turn and "took [her] foot off the gas and put it on the brake to turn to see where the sound came from." Cortez testified that Castro "gunned her car and then slammed on her brakes in front of [him]."

Viewing this evidence in the light most favorable to Cortez, a reasonable jury could find that Castro acted negligently by initiating or continuing her turn after Cortez changed lanes or by stopping mid-turn and obstructing the left through lane. Thus, the issue of

8

negligence should have been determined by the trier of fact — in this case, the jury, not the court. *See Hesse,* 176 P.3d at 764.

¶ 20 Second, evidence that Cortez was speeding and driving recklessly before and during the accident does not justify a directed verdict in favor of Castro. "[T]he evidence supporting a directed verdict must do more than contradict conflicting evidence; it must *nullify*" it. *Huntoon,* 969 P.2d at 686 (citation omitted). But the evidence the district court relied on does not nullify the evidence suggesting that Castro acted negligently; instead, it suggests that Cortez was comparatively negligent. And "[i]n a comparative negligence case, '[t]he relative degrees of fault are to be determined by a trier of fact except in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference.'" *Hesse,* 176 P.3d at 764 (second alteration in original) (quoting *Gordon v. Benson,* 925 P.2d 775, 777 (Colo. 1996)). Considering the evidence discussed above, this is not one of those "clearest of cases" that warranted a directed verdict.[2]

---

[2] Castro's argument that her testimony established that she did not act negligently fails for the same reasons.

¶ 21     Finally, to the extent that it relied on *Ratliff*, 470 P.2d at 580, to enter a directed verdict on liability, the district court erred. *Ratliff* discussed the "look but fail to see" rule, "a well-established rule in this state that a party to an automobile collision who looks but fails to see what is plainly visible is guilty of negligence because his act of looking was obviously done without reasonable care and has no more effect than not looking at all." *Id.*  But "[t]o properly apply this rule, as a matter of law, it is elemental that the approaching vehicle must be plainly visible and that the view of it must be unobstructed"; therefore, "[i]f the evidence on these points is not clear or is disputed, then it remains a fact question for the trier of the facts to resolve." *Id.*

¶ 22     In this case, it was a disputed issue at trial whether Cortez was visible to Castro as she began her left turn.  Thus, that question should have been submitted to the jury.  *See id.*; *see also Brady v. Burlington N. R.R. Co.*, 752 P.2d 592, 593-94 (Colo. App. 1988) (error to instruct the jury on the "look but fail to see" rule where there was conflicting evidence as to whether the object was plainly visible).

¶ 23    Moreover, while the proper application of the "look but fail to see" rule can establish a person's negligence, the district court's conclusion that this rule does not apply cannot, by itself, establish that the person was *not* negligent.  In other words, just because a person did not act negligently by looking yet failing to see what is plainly visible does not mean that the person was not negligent in some other respect.  *See Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 702 n.20 (2d Cir.1980) ("The proposition that 'A implies B' is not the equivalent of 'non-A implies non-B,' and neither proposition follows logically from the other.  The process of inferring one from the other is known as 'the fallacy of denying the antecedent.'"); Douglas Lind, *Logic & Legal Reasoning* 222, 243 (2d ed. 2007).

¶ 24    In summary, there was evidence from which a reasonable jury could conclude that Castro acted negligently; therefore, irrespective of evidence of Cortez's own negligence, it was error for the district court to enter a directed verdict on liability.

## C.    Damages

¶ 25    We also conclude that the district court erred by entering a directed verdict on damages because Cortez presented some

11

evidence of both economic and noneconomic damages. *See* § 13-21-102.5(2)(b), C.R.S. 2025 (noneconomic damages include "pain and suffering, inconvenience, emotional stress, and impairment of the quality of life").

¶ 26    Starting with economic damages, during trial, Cortez

- testified that he broke "basically all" his ribs, his pelvis, and his hip in two places; that he "tore [his] abdominal wall"; and that he had bruises, scrapes, and scratches;

- testified to (1) staying in an ICU; (2) staying at an inpatient rehabilitation facility; (3) having x-rays taken; (4) receiving treatment to prevent blood clots; and (5) undergoing surgery to repair a hernia;

- introduced photos of various injuries taken in a hospital setting, including one photo showing an incision and surgical drain on his abdomen; and

- testified that he had been billed "like 192, 195 thousand, somewhere around there" for his medical care.

This evidence was sufficient to establish that Cortez suffered damages from the crash. And Cortez's testimony about the injuries he sustained, the treatments he received, and the amount he was

12

billed for medical services was "some evidence of the reasonable value of the medical services," *Gilley v. Oviatt*, 2025 COA 27, ¶ 29, notwithstanding the fact that no medical records, bills, or expert testimony were admitted at trial. *See Lawson v. Safeway, Inc.*, 878 P.2d 127, 131 (Colo. App. 1994) (testimony as to the amount the plaintiff was billed for medical services following an injury was some evidence of the reasonable value of those services).

¶ 27 Next, the district court's oral ruling did not address noneconomic damages, but the following evidence was presented at trial:

- Cortez testified that his "health is nowhere near what it was before"; that now the "right side of [his] body is always in pain"; that now he has "a hard time just walking through the grocery store"; and that he now "just keep[s] to [him]self" and does not "talk to people," does not "go out," and does not "ride a motorcycle anymore."

- Cortez's friend testified that, after the accident, Cortez changed from "an extrovert to an introvert" and no longer would "go and do big hikes and go on rides with the

13

motorcycle clubs and basically go be a social person going out to different events and stuff like that."

- Cortez's mother testified that Cortez no longer does many of the things he enjoyed doing before the accident, including hiking, camping, fishing, and riding motorcycles. She also testified that he became more emotional and stopped dating.

From this evidence, a reasonable jury could conclude that Cortez is entitled to damages for pain and suffering, inconvenience, emotional stress, or impairment of his quality of life. *See* § 13-21-102.5(2)(b).

¶ 28 Because Cortez introduced some evidence that he sustained economic and noneconomic damages, the district court erred by entering a directed verdict on damages. *See Goddard*, ¶ 25.

### III. Disposition

¶ 29 The judgment is reversed, and the case is remanded for a new trial.

JUDGE TOW and JUDGE SULLIVAN concur.