Opinion by Judge TERRY.
¶ 1 In this action under the Animal Protection Act, sections 35-42-101 to - 115, C.R.S.2011, plaintiff, John Stulp, the Commissioner of Agriculture (Commissioner), sought an order permanently enjoining defendants, Dean Schuman and Schuman Cattle, LLC, from owning, managing, controlling, or otherwise possessing livestock in Logan County. The trial court entered such an injunction, and defendants now appeal on the grounds that the injunction was unwarranted and violated the United States and Colorado Constitutions. We affirm.
I. Background
¶ 2 Defendants' cattle ranch became the focus of an investigation by the Logan County Sheriff's Department in February 2010. One month later, the Colorado Department of Agriculture Bureau of Animal Protection (CDA) inspected the property after receiving complaints of dead cattle on the ranch.
¶ 3 The Commissioner petitioned the trial court for injunctive relief to remove any livestock from defendants' ranch; allow state officials to enter defendants' property to provide veterinary care, food, and water to the livestock; and prohibit defendants from violating any other provision of the Act. After holding a hearing, the court issued an "Order Granting Preliminary Injunction and Regarding Fitness of Ownership and Disposition of Property," finding that "[d]efendants are not fit to provide adequately for the health and well[-]being of the cattle that they own and are not fit to own these cattle or any cattle during the pendency of this matter." The order permitted the Commissioner to seize all cattle from defendants' ranch and sell them at auction.
*459 ¶ 4 In a parallel criminal proceeding, defendant Dean Schuman was convicted of fourteen counts of cruelty to animals.
¶ 5 Before the scheduled permanent injunction hearing, the parties filed a joint motion for summary judgment, in which defendants stipulated to the facts contained in the Commissioner's amended complaint. Because the only contested issue was the appropriate remedy to be imposed by the court, no evidentiary hearing was held regarding the permanent injunction.
¶ 6 After considering the parties' briefs, the trial court issued a permanent injunction finding defendants unfit to provide for the health and well-being of livestock. The court permanently enjoined defendants from owning, managing, controlling, or otherwise possessing livestock in Logan County.
¶ 7 This appeal followed.
II. Analysis
¶ 8 Defendants contend the trial court exceeded its authority by permanently enjoining them from owning, managing, controlling, or possessing livestock in Logan County. We are not persuaded.
A. Standards of Review
¶ 9 We review the trial court's order permanently enjoining defendants from owning livestock for an abuse of discretion, see People v. Reyes, 166 P.3d 301, 302 (Colo.App.2007), and we defer to the trial court's factual findings pertaining to the requested injunctive relief if they are supported by the record, see Dallman v. Ritter, 225 P.3d 610, 620 (Colo.2010).
¶ 10 A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. E-470 Pub. Highway Auth. v. Revenig, 140 P.3d 227, 230 (Colo.App.2006). A court also abuses its discretion when it misconstrues or misapplies the law. Reyes, 166 P.3d at 302.
¶ 11 Our review of statutory provisions is de novo. Shelby Resources, LLC v. Wells Fargo Bank, 160 P.3d 387, 389 (Colo.App.2007).
¶ 12 The goal of statutory interpretation is to ascertain the General Assembly's intent. People v. Nance, 221 P.3d 428, 430 (Colo.App.2009). If legislative intent is clear from the plain language of the statute, other rules of statutory interpretation need not be applied. Id. The words of statutes are to be given their plain and ordinary meaning. Town of Telluride v. Lot Thirty-Four Venture, L.L.C., 3 P.3d 30, 35 (Colo.2000).
B. Animal Protection Act Provisions
¶ 13 As pertinent here, the Act provides: "No animal shall be mistreated or neglected to such degree or abandoned in any circumstance so that the animal's life or health is endangered." § 35-42-109(1), C.R.S.2011. The Act defines "abandon" as "the leaving of an animal without adequate provisions for the animal's proper care by its owner," "mistreat" as "every act or omission which causes or unreasonably permits the continuation of unnecessary or unjustifiable pain or suffering," and "neglect" as the "failure to provide food, water, protection from the elements, or other care generally considered to be normal, usual and accepted." § 35-42-103(1), (9) - (10), C.R.S.2011.
¶ 14 The Act vests the Commissioner with the authority to enforce its provisions. § 35-42-112(1), C.R.S.2011. The provision of the Act at issue here states:
Whenever it appears to the [Commissioner] upon sufficient evidence satisfactory to the [Commissioner] that any person has engaged in or is about to engage in any act or practice constituting a violation of any provision of this article ... he may apply to any court of competent jurisdiction to temporarily or permanently restrain or enjoin the act or practice in question and to enforce compliance with this article....
§ 35-42-112(3), C.R.S.2011.
C. Appropriateness of Permanent Injunction
¶ 15 We first address and reject defendants' contention that the permanent injunction prohibiting defendants from owning livestock in Logan County was unwarranted.
¶ 16 The Act provides courts with authority "to enforce compliance with" the Act *460 through injunctive relief. Id. That section exempts the Commissioner from having to prove irreparable injury, demonstrate the inadequacy of a remedy at law, or post bond as prerequisites to obtaining an injunction. Id.; see also Kourlis v. District Court, 930 P.2d 1329, 1334-35 (Colo.1997) (statutory scheme supersedes C.R.C.P. 65 requirements of proving irreparable injury, demonstrating inadequacy of remedy at law, or posting bond). The Commissioner may petition for injunctive relief whenever it appears, based on "sufficient evidence satisfactory to the [Commissioner]," that any person has violated, or is about to violate, any provision of the Act or any rule adopted under the Act. § 35-42-112(3).
¶ 17 "An injunction is an extraordinary and discretionary equitable remedy" that is "intended to prevent future harm." Bd. of Cnty. Comm'rs v. Vandemoer, 205 P.3d 423, 430 (Colo.App.2008). Trial courts are vested with broad discretion to formulate the terms of injunctive relief. Colo. Springs Bd. of Realtors, Inc. v. State, 780 P.2d 494, 498 (Colo.1989) ; see also United States v. E.I. du Pont de Nemours & Co., 366 U.S. 316, 323, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) ("[T]he suit has been a futile exercise if the Government proves a violation but fails to secure a remedy adequate to redress it.").
¶ 18 In the joint motion for summary judgment, defendants stipulated to the following facts:
• Defendants owned and grazed a herd of approximately fifty cattle on their property.
• An officer of the CDA made the following observations:
• the only available water source for the livestock was a pond or water collecting area that contained no fewer than four carcasses;
• cattle had evidence of hair loss and skin abrasions (evidence of possible external parasitism); and
• carcasses of dead cattle were scattered throughout the entirety of the twenty-acre pasture and inside the various out-buildings located on the property.
• A United States Department of Agriculture Veterinary Medical Officer observed:
• a cow with an increased respiratory rate (twice the normal rate) and a deformed left leg (forty percent lame);
• a cow with mucous coming from its nose, an increased respiratory rate, and a cough ;
• a cow with a severely deformed left leg (eighty percent lame);
• at least ten cattle with "bottle jaw," a clinical symptom of low blood protein;
• at least three carcasses in the pond from which the cattle drank; and
• of the fifty cattle on the property, none that could be considered "fat."
• The Chief Investigator for the Bureau of Animal Protection observed the following:
• cattle were feeding on foxtail millet, which is generally considered to be "filler" without the nutritional value of grass hay or alfalfa;
• cattle were eating at the bottom parts of round bales that were situated above them, making the bales unstable and likely to fall upon them; and
• in total, there were approximately sixty recent mortalities.
¶ 19 These stipulated facts supplemented the following testimony that had been presented at the preliminary injunction hearing:
• a veterinarian performing a necropsy on a heifer stated that it displayed "the most extreme example of starvation" she had ever seen;
• hay available to the cattle during the CDA's investigation was filled with urine and defecation;
• forage on the pasture was insufficient and immature; and
• there was one downed heifer that was severely emaciated and had not moved from her downed position for an extensive period of time, as evidenced by the amount of feces under her tail; the heifer was extremely weak and would not move her head to ward off flies that *461 were landing on her face; and the heifer was euthanized to end her suffering.
¶ 20 Taken together, these facts support the trial court's conclusions that defendants violated the provisions of the Act and that the Commissioner was entitled to injunctive relief.
¶ 21 Defendants argue that the scope of the relief ordered by the trial court-permanently prohibiting defendants from owning livestock is-overly broad. We disagree.
¶ 22 Although defendants contended that their animal husbandry practices conformed to industry standards, the trial court found to the contrary. The court's order states:
Either [d]efendant Schuman does not understand what constitutes accepted animal husbandry practices in the cattle industry, or, for financial reasons or otherwise, he refuses to conform to those practices.
In short, based on the evidentiary record, the [d]efendants are not persons fit to provide for the health and well being of livestock. Under the circumstances of this case, permitting the [d]efendants to own, possess, or control livestock is likely to result in repetition of the same circumstances that gave rise to this case. As the [Commissioner] notes, [d]efendants express no remorse, take no responsibility for past acts or omissions, and offer no evidence of rehabilitation. [Defendant Schuman's] attitude has been unrepentant and incorrigible. Moreover, [d]efendants present nothing from which to conclude that they would refrain from past practices if they are now permitted to possess livestock.
[The Commissioner] succeeded on the merits of this action. Defendants' violations of [the Act] were egregious. Granting a permanent injunction will serve the interests of the public and advance the legislative intent and public policy expressed in the Act to assure that persons responsible for the care or custody of such animals are fit to adequately provide for the health and well-being of such animals. The balance of equities favors entry of a permanent injunction in the form and scope requested by the [Commissioner]. Entry of a permanent injunction is necessary to prevent future violations of the Act. Merely restraining the [d]efendants from committing violations of the Act will [neither] effectuate the relief to which the [Commissioner] is entitled nor serve the public policy expressed in the Act.
¶ 23 The Act authorizes a court to "permanently restrain or enjoin the act or practice in question and to enforce compliance with this article," § 35-42-112(3). Here, the "act or practice in question" was defendants' widespread mistreatment and neglect of animals. Once the trial court found, with record support, that defendants engaged in such mistreatment and neglect, did not conform to "accepted animal husbandry" practices, showed a lack of rehabilitation, and showed "nothing from which to conclude that they would refrain from past practices" in the future, it was authorized to permanently enjoin defendants from owning livestock as the most appropriate means to prevent such mistreatment and neglect in the future.
¶ 24 Defendants argue that the court should have crafted an injunction enjoining them from engaging in specific practices regarding feed, water, and failure to euthanize. Only after defendants violated the terms of such an injunction, they argue, could the court then explore whether it would be appropriate or lawful to enter an injunction as broad as the one entered here. Given the facts presented here, we are not persuaded.
¶ 25 The Act's legislative declaration states, "[T]he protection of ... livestock is a matter of statewide concern; and ... it is the policy of this state that persons responsible for the care or custody of such animals be persons fit to adequately provide for the health and well-being of such animals." § 35-42-102, C.R.S.2011. To divest a court of the authority to permanently enjoin an owner from future livestock ownership, after finding that the owner is unfit to own livestock and shows no indication of rehabilitation, would allow an unfit and unrehabilitated owner unlimited opportunities to again purchase livestock and mistreat them. Such a circumstance could lead to multiple proceedings *462 alleging similar mistreatment and neglect of animals. The legislature's clear intent is to protect livestock and companion animals from such mistreatment and neglect, and we conclude that defendants' reading of the statute to eliminate such a permanent remedy would contradict the legislative intent and would place an unnecessary strain on judicial resources. See State v. Nieto, 993 P.2d 493, 501 (Colo.2000) (appellate courts may not construe a statute in a manner that would lead to an absurd result).
¶ 26 We conclude that the Act authorized the trial court to permanently enjoin defendants from future ownership of livestock to enforce compliance with the Act's provisions. We perceive no abuse of the court's discretion in its permanent injunction order.
¶ 27 As the Commissioner concedes, the trial court has inherent discretion to modify or lift the injunction, see Trans-W. Express, Ltd. v. Local Union No. 17, 43 Colo.App. 158, 161, 603 P.2d 959, 961 (1979), and defendants may petition the court in the future to show a significant change in circumstances that may warrant such relief.
D. Constitutionality of Permanent Injunction
¶ 28 We next consider and reject defendants' contention that the permanent injunction violates the Due Process Clause of the United States Constitution and article II, section 3 of the Colorado Constitution.
¶ 29 Whether an injunction violates a constitutional right is a question of law to be reviewed de novo. Evans v. Romer, 854 P.2d 1270, 1274-75 (Colo.1993) ; Saint John's Church in the Wilderness v. Scott, 2012 COA 72, ¶ 33, 296 P.3d 273.
¶ 30 The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Nevertheless, the state may regulate private property rights, including the right to engage in a legitimate occupation, to benefit the public interest. Breard v. City of Alexandria, 341 U.S. 622, 632-33 & n. 12, 71 S.Ct. 920, 95 L.Ed. 1233 (1951) (neither property rights nor contract rights are absolute), abrogated on other grounds by Vill. of Schaumburg v. Citizens for Better Env't, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) ; see also New State Ice Co. v. Liebmann, 285 U.S. 262, 278, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Fourteenth Amendment prevents state from arbitrarily interfering with private business or imposing unreasonable and unnecessary restrictions upon it).
¶ 31 The Colorado Constitution provides: "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of ... acquiring, possessing and protecting property...." Colo. Const. art. II, § 3. Property rights are not absolute, however. See Colo. Anti-Discrimination Comm'n v. Case, 151 Colo. 235, 246, 380 P.2d 34, 41 (1962) ( "[T]here are certain 'essential attributes of property' which cannot be unreasonably infringed upon by legislative action. However, there are no absolutes in these rights."); see also Bunzel v. City of Golden, 150 Colo. 276, 280-81, 372 P.2d 161, 164 (1962) ("[Article II, section 3 of the Colorado Constitution] does not confer upon the citizen a constitutional right to conduct a business which may be inimical to the public morals."); In re Ch. 118, Sess. Laws 1935, 97 Colo. 587, 596, 52 P.2d 663, 667 (1935) ("The unrestricted privilege to engage in business or to conduct it as one pleases is not guaranteed by the Constitution.").
¶ 32 We recognize that the rights to own property and carry on a legitimate business are important constitutional rights. Yet even the fundamental liberty interest of a parent in the care, custody, and control of his or her child can be terminated where the parent has abused or neglected the child and cannot be rehabilitated. See Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ; see also People in Interest of A.M.D., 648 P.2d 625, 632, 635 (Colo.1982) ("[A] natural parent's desire for and right to the companionship, care, custody, *463 and management of his or her children is an interest far more precious than any property right...."; parental rights may be terminated where criteria for termination of parental rights are shown by clear and convincing evidence) (quoting Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ). Similarly, the rights to own animals and conduct a livestock business are not unlimited and can be abrogated in appropriate circumstances.
¶ 33 Defendants rely on May v. People, 636 P.2d 672, 681 (Colo.1981), to argue that the trial court's injunction violated article II, section 3 of the Colorado Constitution. In May, our supreme court concluded that a municipal ordinance prohibiting an individual from selling candy door-to-door passed constitutional muster because the ordinance "[did] not prohibit the defendant from selling candy; he is prohibited only from going door-to-door, a method of selling the candy." Id.
¶ 34 By analogy to May, defendants argue that the trial court's injunction is unconstitutional because it does not merely prohibit a "method" of raising cattle, but rather, permanently enjoins defendants from owning livestock. Under the circumstances presented here, we conclude that it was not a constitutional violation for the trial court to permanently enjoin defendants from owning livestock. Those circumstances include the overwhelming evidence of defendants' unwillingness to conform to accepted methods of animal husbandry. See State v. Webb, 130 S.W.3d 799, 838 (Tenn.Crim.App.2003) (affirming trial court's injunction prohibiting defendants from owning animals for ten years as constitutional based on evidence showing their mistreatment of animals). As summarized above, two witnesses, respectively qualified as experts in the fields of large animal production and veterinary science pertaining to cattle, testified that defendants were not fit to own livestock. A third witness-a large livestock veterinarian-testified that one of defendants' cattle was severely emaciated and had been neglected. As the trial court noted in its order, defendants presented "nothing from which to conclude that they would refrain from past practices" if permitted to own livestock in the future.
¶ 35 We conclude that, based on the record before the trial court, the permanent injunction prohibiting defendants from owning livestock in Logan County was not an arbitrary, unreasonable, or unnecessary restraint on defendants' rights to carry on an occupation and did not impede defendants' constitutional rights.
¶ 36 Judgment affirmed.
Judge BOORAS and Judge FOX concur.