The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

**2019COA45**

**No. 17CA2260, *Rinker v. Colina-Lee* — Real Property — Easements; Remedies — Injunctive Relief**

This is the first case in Colorado, and one of the few in the United States, that addresses whether a court must find irreparable harm prior to entering an injunction to enforce an easement. The opinion adopts the position set forth in section 1.2(1) of the Restatement (Third) of Property: Servitudes (Am. Law Inst. 2000) that a finding of irreparable harm is not a prerequisite for entering an injunction to protect an easement.

The decision also addresses two other important issues: (1) whether an unincorporated association is a necessary party in a case involving interpretation of its "founding document" and (2) whether an appellant preserves an issue for appeal where the trial

court did not give the appellant an opportunity to be heard on the matter.

A division of the court of appeals affirms the holding of the district court.

COLORADO COURT OF APPEALS                                    **2019COA45**

Court of Appeals No. 17CA2260
Larimer County District Court No. 15CV30862
Honorable Stephen J. Jouard, Judge

George Rinker,

Plaintiff-Appellant,

v.

Lori Rose Colina-Lee,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LIPINSKY
Dailey and Furman, JJ., concur

Announced March 21, 2019

Herms Herrera LLC, Jeffrey B. Cullers, Fort Collins, Colorado, for Plaintiff-Appellant

Fischer Brown Bartlett Gunn P.C., Todd W. Rogers, Fort Collins, Colorado, for Defendant-Appellee

¶ 1     Plaintiff-appellant, George Rinker, and defendant-appellee, Lori Rose Colina-Lee, are neighbors in the semirural subdivision of Soldier Canyon Estates in Larimer County.  Their dispute centers on a culvert that Rinker installed to prevent runoff from draining onto his property.  Colina-Lee contends that Rinker breached the neighbors' road maintenance agreement when he installed the culvert.

¶ 2     Rinker appeals the district court's orders granting Colina-Lee leave to assert counterclaims, denying his motion for leave to join the Galena Court Property Owners' Association (the Association) as a defendant, and entering an injunction requiring Rinker to unblock the culvert.

¶ 3     We affirm the district court's rulings and hold (1) the merits of a district court's sua sponte ruling are reviewable on appeal, regardless of whether any party contemporaneously objected to it; (2) an unincorporated association is not a necessary party in a case involving interpretation of its founding document; and (3) a finding

1

of irreparable harm is not a prerequisite for entering a permanent injunction to protect an easement.

## I. The Dispute Between the Residents of Galena Court

### A. Rinker Installs the Culvert

¶ 4 Galena Court, an unpaved roadway, serves six lots in Soldier Canyon Estates. The households residing on Galena Court entered into the Galena Court Property Owners' Association Road Maintenance Agreement (the Agreement). The Agreement established the Association and required the homeowners to pay annual dues to fund the maintenance of Galena Court.

¶ 5 Shortly after purchasing his property on Galena Court, Rinker installed a culvert along the front of his driveway to divert the natural runoff from the land above his home. More than a decade later, Jaeson Brewen, another resident of Galena Court, reshaped a portion of Galena Court uphill from Rinker's property. As part of this work, Brewen placed recycled asphalt material on Galena Court. He also increased the grade and altered the contour of Galena Court. These changes caused sediment and asphalt particles to run through the culvert and to collect on Rinker's front yard.

¶ 6     In addition, the Association changed the shape of the section of Galena Court uphill from Rinker's property.  Rinker contended that the new shape of Galena Court exacerbated the deposits of asphalt onto his yard and increased the difficulty of accessing his property.

¶ 7     Rinker complained to the Association about the asphalt particles that were washing down from Galena Court, through the culvert, and onto his front yard.  Although the Association installed a filtration system to attempt to protect Rinker's property from the runoff, polluted water continued to flow from Galena Court onto Rinker's front yard.  Rinker tried unsuccessfully to fix the drainage problem by installing filters over the culvert.

¶ 8     When these solutions proved ineffective, Rinker blocked the culvert to protect his property from further sediment damage.  The blocked culvert caused road sediment to flow onto, and to erode, Galena Court.  Larimer County demanded that Rinker unblock the culvert, asserting that the blocked culvert restricted "the flow of water in the road-side ditch, causing it to overflow the traveled way."

¶ 9    Rinker filed an action against Larimer County and Brewen. Rinker asked the district court to enter (1) a declaratory judgment that Larimer County lacked jurisdiction over Galena Court because it was not a public right-of-way and (2) an injunction barring Larimer County from altering Rinker's property or any part of Galena Court adjacent to Rinker's property. In addition, Rinker asserted a trespass claim against Brewen.

¶ 10    Larimer County filed a counterclaim for an injunction requiring Rinker to remove the obstructions he had placed on Galena Court and in or near the culvert. The County also sought an injunction prohibiting Rinker from placing any additional obstructions on Galena Court or otherwise interfering with Larimer County's authority over Galena Court. Brewen asserted a counterclaim for a mandatory injunction compelling Rinker to remove the obstacles and to restore the surface of Galena Court.

### B.    The District Court Grants Colina-Lee Leave to File Counterclaims

¶ 11    Larimer County moved for an order requiring Rinker to join all the property owners in the Soldier Canyon Estates subdivision as necessary parties pursuant to C.R.C.P. 19. After the district court

4

granted the motion, Rinker filed an amended complaint that included claims against all the Soldier Canyon Estates property owners, including Colina-Lee and the other owners of property adjoining Galena Court. In her answer, Colina-Lee pleaded, as an affirmative defense, that Rinker had breached the Agreement.

¶ 12 As the trial date approached, Larimer Country vacated the public right-of-way on Galena Court. Rinker then settled with Larimer County and Brewen. As part of the settlements, Rinker agreed to dismiss his claims against Larimer County and Brewen, who agreed to dismiss their counterclaims. Rinker and Brewen further agreed to the entry of a stipulated judgment that, among other provisions, required Rinker to remediate portions of Galena Court that his culvert had damaged. The stipulated judgment, however, would have granted Rinker authority to alter Galena Court without consulting the other owners of property adjoining Galena Court. In light of his settlements with Larimer County and Brewen, Rinker asked the district court to dismiss his claims against the property owners.

¶ 13    Colina-Lee objected to the dismissal motion and the proposed stipulated judgment, which she contended would adversely affect her interest in Galena Court. She argued that, regardless of Rinker's settlements with Larimer County and Brewen, the proposed stipulated judgment would give Rinker authority to alter Galena Court without the approval of the remaining Galena Court property owners, in violation of the Agreement. Colina-Lee requested a pretrial conference to clarify which issues, claims, and parties remained for trial.

¶ 14    At the pretrial conference, counsel for Colina-Lee orally moved for leave to amend her answer to assert counterclaims for breach of the Agreement. Without providing Rinker with an opportunity to address Colina-Lee's motion, the district court granted the motion from the bench. The district court found that Colina-Lee should be permitted to assert a cross-claim or counterclaim in light of the significant change in the posture of the case as a consequence of Rinker's settlements with Larimer County and Brewen. The district court then asked counsel for Rinker whether he had anything further to say. Counsel for Rinker said that, because the district

6

court had already granted Colina-Lee's motion, Rinker would not present any arguments in opposition to the motion for leave to amend.

¶ 15     Rinker subsequently moved for reconsideration of the district court's ruling granting Colina-Lee leave to amend. In his motion for reconsideration, Rinker argued for the first time that (1) Colina-Lee had waited too long to plead her new claims; (2) she had no valid excuse for asserting an untimely motion for leave to amend; and (3) the assertion of Colina-Lee's new claims would be highly prejudicial to Rinker. The district court summarily denied Rinker's motion for reconsideration.

¶ 16     In her counterclaims, Colina-Lee sought (1) an injunction requiring Rinker to comply with the Agreement and to open the blocked culvert and (2) a declaratory judgment that, under the Agreement, Rinker had no right to make unilateral changes to Galena Court without the approval of the other Galena Court property owners. After Rinker filed his answer to Colina-Lee's counterclaims, the district court set a new trial date.

C.     The District Court Denies Rinker's Motion for Leave to Amend

¶ 17    Rinker moved for leave to amend his complaint two months before trial. Rinker sought to join the Association as a defendant and to assert claims against the Association for nuisance and trespass. He also requested leave to add a claim for a declaratory judgment stating that the Agreement required the Association to maintain Galena Court.

¶ 18    The district court denied Rinker's motion for leave to amend, finding that (1) the Association was not a necessary party, contrary to Rinker's contention; (2) an amendment adding claims against a new party would require vacating the new trial date; and (3) Rinker had not shown good cause for amending his complaint.

### D.    Colina-Lee Prevails at Trial

¶ 19    At the conclusion of the trial, the district court granted the relief that Colina-Lee had requested. It entered an injunction requiring Rinker to unblock the culvert. (Although the district court's order also requires Rinker to restore the culvert to its original location, the record does not reflect from where Rinker had moved the culvert.)

¶ 20 The district court also entered a declaratory judgment stating that (1) each property owner has the right to enforce the Agreement; (2) the Agreement governs the repair, maintenance, and improvement of Galena Court; (3) the Association is responsible for maintaining Galena Court; (4) the Association is responsible for any improvements to Galena Court; (5) pursuant to the Agreement, the property owners must avoid damaging or degrading Galena Court beyond the wear due to normal usage; and (6) the Agreement does not otherwise impair or limit the property owners' use of their respective properties. Rinker filed this appeal.

## II. The District Court Did Not Abuse Its Discretion in Granting Colina-Lee's Motion for Leave to Amend

¶ 21 Rinker contends that the district court erred in granting Colina-Lee leave to assert counterclaims against him. He argues that Colina-Lee's motion was untimely and prejudicial. We disagree.

### A. Rinker's Opposition to Colina-Lee's Motion Is Properly Before Us on Appeal

¶ 22 Before reviewing the merits of Rinker's opposition to Colina-Lee's motion for leave to amend, we consider whether Rinker's arguments against Colina-Lee's motion are properly before us. The

parties did not brief whether Rinker preserved those arguments for appeal. Preservation is a threshold question. *People v. Bondsteel*, 2015 COA 165, ¶ 6, ___ P.3d ___, ___ (*cert. granted* Oct. 31, 2016). We do not review issues that have been insufficiently preserved. *Liberty Bankers Life Ins. Co. v. First Citizens Bank & Tr. Co.*, 2014 COA 151, ¶ 25, 411 P.3d 111, 118.

¶ 23    We conclude that we may review the issue given the circumstances under which the district court granted Colina-Lee's motion. Without advance notice to the district court or to Rinker, at the pretrial conference, Colina-Lee orally moved for leave to assert counterclaims. Following a brief colloquy with counsel for Colina-Lee, and without asking for Rinker's position on the motion, the district court granted Colina-Lee leave to "file an amended pleading to assert whatever cross-claims or counterclaims she deems appropriate."

¶ 24    Before issuing its ruling, the district court never gave Rinker a timely opportunity to be heard on the matter. Only after granting the motion did the district court ask Rinker's attorney, "do you have anything further?"

¶ 25    As a general rule, a party must make a timely and specific objection or request for relief in the district court to preserve an issue for appeal. *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 326 (Colo. 2009). To be timely, a party must assert the objection or request for relief contemporaneously with the allegedly erroneous action. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 600 (Colo. App. 2007). In addition, presentation of new arguments in a motion for reconsideration is improper. *Ogunwo v. Am. Nat'l Ins. Co.*, 936 P.2d 606, 611 (Colo. App. 1997); *see also* C.R.C.P. 121, § 1-15(11) ("Motions to reconsider interlocutory orders of the court . . . . are disfavored. A party moving to reconsider must show more than a disagreement with the court's decision."); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle . . . to tender new legal theories").

¶ 26    Initially, we note that we need not decide whether, to preserve his objections for appeal, Rinker should have made a record of his objections immediately after the court ruled on the matter. (It should go without saying, however, that the district court should

have provided him with an opportunity to respond to Colina-Lee's oral motion prior to deciding it.)  That is because where, as here, the trial court rules sua sponte on an issue, the merits of its ruling are subject to review on appeal, whether timely objections were made or not.  *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 71 n.7, 411 P.3d 1043, 1054 n.7 (referencing the rule that "where a trial court addresses an argument, whether that argument was preserved is moot"); *cf. People v. Milligan*, 77 P.3d 771, 775 (Colo. App. 2003) ("[B]ecause the trial court addressed defendant's statements and the *Miranda* issue at the suppression hearing, we conclude the issue was properly preserved for appeal.").

¶ 27    Consequently, we address the merits of Rinker's objections to Colina-Lee's motion for leave to amend.

### B.    Standard of Review

¶ 28    Granting leave to amend is within the sound discretion of the trial court.  *Benton v. Adams*, 56 P.3d 81, 85 (Colo. 2002).  On appeal, we review whether the trial court abused its discretion in ruling on the motion to amend.  *Polk v. Denver Dist. Court,* 849 P.2d 23, 25 (Colo. 1993).

12

¶ 29   A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230 (Colo. App. 2006). "It is not necessary that we agree with the trial court's decision." *Streu v. City of Colo. Springs ex rel. Colo. Springs Utils.*, 239 P.3d 1264, 1268 (Colo. 2010). A court also abuses its discretion when it misconstrues or misapplies the law. *People v. Reyes*, 166 P.3d 301, 302 (Colo. App. 2007).

¶ 30   The trial court's determination must not exceed the bounds of the rationally available choices, given the facts and applicable law in the case. *Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1186 (10th Cir. 2008).

C.   The Law Governing Motions for Leave to Amend

¶ 31   C.R.C.P. 15(a) prescribes "a liberal policy of amendment and encourages the courts to look favorably on requests to amend." *Eagle River Mobile Home Park, Ltd. v. Dist. Court*, 647 P.2d 660, 662 (Colo. 1982) (quoting *Varner v. Dist. Court*, 618 P.2d 1388, 1390 (Colo. 1980)). Pleadings are not sacrosanct, and justice is best served by permitting parties to ensure that the issues, as ultimately

framed, represent the parties' true positions. *Brown v. Schumann*, 40 Colo. App. 336, 338-39, 575 P.2d 443, 445 (1978).

¶ 32    Our leniency toward the granting of amendments is not without limits, however. *Polk*, 849 P.2d at 25. Leave to amend may be denied where, for example, the moving party unduly delayed in seeking the amendment, the amendment would unduly prejudice the opposing party, the moving party acted in bad faith or with a dilatory motive, or the amendment would be futile. *Varner*, 618 P.2d at 1390; *Akin v. Four Corners Encampment*, 179 P.3d 139, 147 (Colo. App. 2007).

¶ 33    The district court must assess the motion for leave to amend in light of the totality of the circumstances. *Polk*, 849 P.2d at 26. It must balance the policy favoring amendment of pleadings against the burden that granting the amendment may impose on the other party. *Gaubatz v. Marquette Minerals, Inc.*, 688 P.2d 1128, 1130 (Colo. App. 1984).

¶ 34    Courts may permit amendment late in a case so long as the amendment does not prejudice the nonmoving party. *Eagle River*, 647 P.2d at 663. The supreme court has affirmed district courts'

orders granting leave to amend four days prior to trial, *Palmer Park Gardens, Inc. v. Potter*, 162 Colo. 178, 182-83, 425 P.2d 268, 271 (1967), and even during trial, *Cont'l Sales Corp. v. Stookesberry*, 170 Colo. 16, 24, 459 P.2d 566, 570 (1969). Delay alone, without a showing of resulting prejudice or an obvious design to harass, generally is an insufficient basis to deny a motion for leave to amend. *Eagle River*, 647 P.2d at 663.

     D.    Colina-Lee's Motion for Leave to Amend Was Timely

¶ 35    Rinker contends that the district court erred in granting Colina-Lee's motion for leave to amend because the motion was untimely. He asserts, correctly, that Colina-Lee had been aware of the facts underlying her counterclaims for months before the pretrial conference. The proposed counterclaims arose under the same facts as those supporting Colina-Lee's affirmative defense of breach of contract, which she included in her answer five months before the pretrial conference.

¶ 36    The record reflects that the district court granted Colina-Lee leave to amend primarily because of the significant change in the posture of the case following Rinker's announcement at the pretrial

conference that he had settled with Larimer County and Brewen. We agree with the district court that Colina-Lee's motion was timely because Rinker's settlements with Larimer County and Brewen significantly impacted Colina-Lee's ability to protect her interest in Galena Court.

¶ 37 The nature of the litigation changed substantially upon Rinker's announcement of his settlements with Larimer County and Brewen. In their respective counterclaims, Larimer County and Brewen sought orders requiring Rinker to remove the obstructions he had placed within the right-of-way on Galena Court and barring him from placing any new obstructions in the right-of-way. In its counterclaim, Larimer County had asserted that (1) Galena Court was a dedicated public road; (2) Larimer County had the sole right to authorize and control the use of Galena Court; and (3) Larimer County's authority superseded the rights of all users of the public right-of-way, including the owners of the lots that abutted the road. Brewen's counterclaim included a cause of action for Rinker's breach of the Agreement.

16

¶ 38    Colina-Lee believed that, through their counterclaims, Larimer County and Brewen were protecting her interest in keeping Galena Court free from Rinker's obstructions. As a consequence of Larimer County's and Brewen's settlements with Rinker, however, their counterclaims dropped out of the case. Rinker's settlements with Larimer County and Brewen would have given Rinker authority to make unilateral changes to Galena Court without consulting the remaining Galena Court property owners.

¶ 39    Upon learning of Rinker's settlement with Brewen, Colina-Lee concluded that she needed to take affirmative steps to protect her interest in Galena Court, including seeking a remedy for the damage that Rinker was causing to Galena Court. For this reason, Colina-Lee orally moved at the pretrial conference for leave to file her own breach of contract counterclaims against Rinker.

¶ 40    We disagree with Rinker's contention that Colina-Lee had ample opportunity before the pretrial conference to assert her counterclaims. The record does not indicate that Colina-Lee could have foreseen that Larimer County and Brewen would drop their counterclaims or that Larimer County would vacate the public

17

right-of-way on Galena Court.  Before the pretrial conference, Colina-Lee could not have known that the parties protecting her interest in Galena Court had agreed to settlement terms that would have allowed Rinker to unilaterally alter Galena Court.

¶ 41   Allowing Colina-Lee leave to amend promoted judicial economy and ensured that all disputes relating to Rinker's alleged violation of the Agreement could be resolved through a single action. Nothing in the record indicates that Colina-Lee filed her motion in bad faith or for a dilatory purpose.

¶ 42   We therefore hold that Colina-Lee did not unreasonably delay in moving for leave to amend, given the material change in the posture of the case upon Larimer County's and Brewen's settlements with Rinker.

### E.   Rinker Did Not Suffer Undue Prejudice as a Consequence of Colina-Lee's Amendment of her Pleading

¶ 43   Rinker argues that the district court's order granting Colina-Lee leave to amend improperly deprived him of the benefits of his settlement with Brewen and forced him to start over in defending a claim for alleged breach of the Agreement.  We disagree.

18

¶ 44 Rinker does not cite any legal authority to support his contention that he could have imposed on Colina-Lee the terms of his settlements with Larimer County and Brewen, even though the settlements would have permitted Rinker to continue to obstruct the portion of Galena Court adjoining Colina-Lee's property. When Larimer County and Brewen settled with Rinker, Colina-Lee needed to protect her interests by asserting her own breach of contract counterclaims.

¶ 45 In any event, the district court cured any possible prejudice to Rinker by continuing the trial date. "Where the prejudice suffered by the opposing party is lack of adequate time to prepare his case, this hardship may be avoided by granting a continuance of the trial date." *Eagle River*, 647 P.2d at 663-64.

¶ 46 Rinker conceded that Colina-Lee's counterclaims were substantially similar to Brewen's breach of contract counterclaim. Rinker had litigated that counterclaim for months. He therefore had ample opportunity to prepare a defense to Colina-Lee's nearly identical counterclaims.

¶ 47    For these reasons, we conclude that the district court did not abuse its discretion in granting Colina-Lee leave to amend.

### III.    The District Court Did Not Abuse Its Discretion in Denying Rinker's Motion for Leave to Amend

¶ 48    Rinker contends that the district court erred in denying his motion for leave to amend his complaint.  We disagree.

#### A.    Standard of Review

¶ 49    As we noted in Part II.B above, granting leave to amend is within the sound discretion of the district court.  *Benton*, 56 P.3d at 85.  We will uphold the district court's decision as long as it does not exceed the bounds of the rationally available choices, given the facts and applicable law.  *Big Sky Network Can., Ltd.*, 533 F.3d at 1186.

#### B.    Rinker's Arguments Supporting His Motion for Leave to Amend

¶ 50    Rinker did not merely request leave to amend his complaint. He sought to join the Association as a new party and to assert new claims against the Association only two months before trial.  He did not seek leave to amend his claims against Colina-Lee, the only other party to the case.

¶ 51　　Rinker contends that the district court erred in denying his motion for leave to amend because the Association was a necessary party, as it "had an interest in the meaning of its own founding document" — the Agreement.

¶ 52　　C.R.C.P. 19(a) states that

> [a] person who is properly subject to service of process in the action shall be joined as a party in the action if: (1) In his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

¶ 53　　Rinker does not support his argument that the Association was a necessary party with any legal authority other than C.R.C.P. 19(a)(1)(A), which refers neither to unincorporated organizations nor to "founding documents."　We are unaware of any case holding that a corporate entity must be joined as a necessary party in any action involving interpretation of its "founding document."

¶ 54　　Three days after oral argument, Rinker submitted supplemental authority in the form of citations to three out-of-state

cases, all decided more than a decade ago. Rinker contends that the cases support his argument that the Association was a necessary party.

¶ 55 Rinker did not comply with C.A.R. 28(i) in tendering the cases. *See* C.A.R. 28(i) ("If pertinent and significant *new authority* comes to a party's attention after the party's brief has been filed, a party may promptly advise the court by giving notice . . . .") (emphasis added). None of the three cases is new. We have discretion to disregard supplemental authority that is not pertinent, significant, and new. *DeHerrera v. Am. Family Mut. Ins. Co.*, 219 P.3d 346, 354 (Colo. App. 2009).

¶ 56 In any event, none of Rinker's cases addresses whether a corporate entity must be joined as a necessary party in a case involving interpretation of its "founding document." *See McCraw v. Aux*, 696 S.E.2d 739, 740 (N.C. Ct. App. 2010); *Page v. Bald Head Ass'n*, 611 S.E.2d 463, 465 (N.C. Ct. App. 2005); *Gurrad v. Klipsun Waters Homeowner's Ass'n*, No. 23029-1-II, 1998 WL 804801, at *2 (Wash. Ct. App. Nov. 20, 1998) (unpublished opinion). Rinker's

supplemental authority, therefore, does not alter our conclusion that the Association was not a necessary party.

¶ 57    We are therefore unconvinced that the district court erred in declining to join the Association as a necessary party.

¶ 58    Indeed, the case law supports the district court's decision that preservation of the trial date warranted denial of Rinker's motion for leave to amend.  In *Apollo Tire, Inc. v. United Bank of Lakewood National Ass'n*, 531 P.2d 976, 977-78 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)), a division of this court held that a district court does not abuse its discretion in denying a motion for leave to amend where "[the] litigation had already been protracted and the granting of plaintiff's motion to amend would have required further lengthy delay in order that the defendants might respond to the new claims for relief."  *See Eckstine v. Harris*, 521 P.2d 1280, 1281 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) (holding that denial of leave to amend is proper where "numerous delays have already occurred, the proposed amendment is not tendered until just prior to the date of the trial, and no

justification appears for further delay in bringing the litigation to an end").

¶ 59    A motion to join a new party is materially different from a request to amend claims against existing parties, particularly if the proposed new party is not necessary to adjudication of the case. Accordingly, we conclude that the district court did not abuse its discretion in denying Rinker's motion for leave to amend.

### IV.    The District Court Did Not Abuse Its Discretion in Entering the Permanent Injunction Against Rinker

¶ 60    Rinker contends that the district court erred in entering a permanent injunction requiring him to unblock the culvert and to restore it to its original location.  (As noted above, the record contains no information regarding the original location of the culvert.  Accordingly, we solely examine that portion of the injunction requiring Rinker to unblock the culvert.)

¶ 61    Specifically, Rinker contends that the district court (1) did not make a finding on each of the required elements of an injunction and (2) entered an overbroad order that improperly mandates Rinker to take specific actions on his property.  We disagree.

## A. Standard of Review

¶ 62    We review the district court's order entering a permanent injunction for an abuse of discretion. *Rome v. Mandel*, 2016 COA 192M, ¶ 60, 405 P.3d 387, 399; *Stulp v. Schuman*, 2012 COA 144, ¶ 9, 410 P.3d 457, 459. The grant or denial of injunctive relief lies within the sound discretion of the district court and will be reversed only upon a showing of an abuse of that discretion. *Langlois v. Bd. of Cty. Comm'rs*, 78 P.3d 1154, 1157 (Colo. App. 2003).

¶ 63    A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair; is based on an erroneous understanding or application of the law; or misconstrues or misapplies the law. *People v. Wunder*, 2016 COA 46, ¶ 20, 371 P.3d 785, 789. When reviewing orders for permanent injunctions, we defer to the district court's underlying factual findings if the record supports them. *Rome*, ¶ 60, 405 P.3d at 399; *Stulp*, ¶ 9, 410 P.3d at 459.

## B. The Required Elements of an Injunction

¶ 64    Under the Colorado law governing permanent injunctions, the party seeking the injunction must generally prove four elements: (1) he or she has achieved actual success on the merits; (2) irreparable

harm will result unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause to the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Langlois*, 78 P.3d at 1158.

¶ 65 Rinker concedes that the district court found that Colina-Lee satisfied the first element for entry of an injunction: actual success on the merits. Accordingly, we do not need to address this element.

¶ 66 Rinker contends that the district court erred in entering the injunction without making findings regarding the second, third, and fourth elements. We disagree.

### 1. Element Two: Irreparable Harm

¶ 67 Although Colorado courts have entered injunctions to enforce easements, *see, e.g.*, *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1237-38 (Colo. 2001); *Upper Platte & Beaver Canal Co. v. Riverview Commons Gen. Improvement Dist.*, 250 P.3d 711, 715-16 (Colo. App. 2010); *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 316-18 (Colo. App. 1996), they have not considered whether a court must satisfy the irreparable harm element before enjoining interference with an easement. (Both Rinker and

26

Colina-Lee concede that their dispute concerns rights to an easement. An easement is a "nonpossessory right to enter and use land in the possession of another . . . ." Restatement (Third) of Prop.: Servitudes § 1.2(1) (Am. Law Inst. 2000).)

¶ 68    For this reason, we turn to the Restatement for guidance on the required elements of an injunction entered to restore an easement. The Restatement explains "why easement cases often require noncompensatory relief." *Upper Platte*, 250 P.3d at 715 (citing section 8.3 of the Restatement (Third) of Prop.: Servitudes authoritatively). "Injunctive relief is normally available to redress violations of easements . . . without proof of irreparable injury or a showing that a judgment for damages would be inadequate." Restatement (Third) of Prop.: Servitudes § 8.3 cmt. b.

¶ 69    Comment b explains that a court need not find the element of irreparable harm in enjoining interference with an easement because (1) the value of an easement can be difficult to quantify; (2) market values may not reflect the easement's value to the land owner; and (3) a party should not be permitted to buy out of a servitude obligation if the servitude continues to serve its purpose.

*Id.* (The Restatement uses the term "servitude" to describe easements and similar rights and obligations that run with the land. *Id.* § 1.1(1)(a) & (b).) We find the reasoning of the Restatement persuasive.

¶ 70    We therefore hold that a party seeking an injunction as a remedy for wrongful interference with an easement is not required to prove irreparable harm.

2.    Elements Three and Four: Balancing the Parties' Interests and Evaluating the Impact of the Proposed Injunction on the Public Interest

¶ 71    The Restatement does not address whether courts may enter an injunction as a remedy for interference with an easement without making findings as to whether (1) the threatened injury outweighs the harm the injunction may cause to the opposing party and (2) the injunction, if issued, will not adversely affect the public interest.

¶ 72    We need not decide whether a court must consider the third and fourth elements when considering an injunction to enforce an easement, however. Regardless of whether those elements apply to

injunctions involving easements, the district court's findings satisfied the third and fourth elements.

### a. The District Court Balanced the Injury to Colina-Lee Against the Harm an Injunction Would Cause Rinker

¶ 73    The district court balanced Colina-Lee's and Rinker's competing interests. The district court acknowledged Rinker's argument that Colina-Lee's interest in the condition of Galena Court must be "balanced with Rinker's rights as the owner of the burdened property."

¶ 74    The district court found that, by blocking the culvert, Rinker caused "erosion, ruts, and channels clearly beyond what would be considered wear [to Galena Court] due to normal usage." The district court noted that the Agreement precluded Rinker from damaging Galena Court in this manner. Therefore, the district court found that, absent the requested injunction, Rinker's activities would result in further harm to Colina-Lee's interest in Galena Court.

¶ 75    At the same time, the district court acknowledged that reopening the culvert would impact Rinker by causing "runoff and debris [to be] deposited in [Rinker's] front yard." The district court

thus considered the harm that entry of the injunction would cause to Rinker.

¶ 76 Therefore, the record reflects that the district court balanced the injury that Rinker was causing to Colina-Lee's interest in Galena Court against the harm that the requested injunction would cause to Rinker. The district court concluded that the benefit of remediating the damage to Galena Court outweighed the harm that Colina-Lee's injunction would cause to Rinker.

b. The District Court Considered Whether the Injunction Would Adversely Impact the Public Interest

¶ 77 The district court determined that the proposed injunction would not adversely affect the public interest, which is the fourth element of an injunction. The district court found that Rinker's actions had degraded Galena Court so badly that operators of passenger vehicles had difficulty driving on it. Drivers' ability to navigate Galena Court without difficulty is a public interest consideration. Thus, the district court considered whether the public interest supported entry of the injunction.

¶ 78 Accordingly, we disagree with Rinker's contention that the district court made insufficient findings before entering the injunction.

### C. Mandatory Injunctions in Easement Disputes

¶ 79 We next address Rinker's challenge to the scope of the injunction. Rinker asserts that the district court abused its discretion by issuing an injunction requiring him to unblock the culvert, rather than simply directing him to cease violating the terms of the Agreement.

¶ 80 "An injunction is an extraordinary and discretionary equitable remedy" that is "intended to prevent future harm." *Bd. of Cty. Comm'rs v. Vandemoer*, 205 P.3d 423, 430 (Colo. App. 2008). Trial courts are vested with broad discretion to formulate the terms of injunctive relief. *Colo. Springs Bd. of Realtors, Inc. v. State*, 780 P.2d 494, 498 (Colo. 1989).

¶ 81 Colorado law allows for the entry of injunctive relief in easement disputes. Injunctive relief is available where the servient owner has interfered with the dominant owner's easement. *Roaring Fork Club*, 36 P.3d at 1237-38; *Upper Platte*, 250 P.3d at 715. "[I]f a plaintiff does not receive a double recovery, a court may issue an

injunction to open a blocked easement . . . ." *Upper Platte*, 250 P.3d at 715 (quoting *Proper v. Greager*, 827 P.2d 591, 597 (Colo. App. 1992)).

¶ 82    Damages are inadequate in easement cases because land is unique, and courts must accommodate competing uses. *Roaring Fork Club*, 36 P.3d at 1235-36. In an easement alteration case, "damages alone will not provide the plaintiff with the actual use to which he is entitled," and thus

> courts usually grant the easement owner injunctive relief when it is desired and when the defendant's conduct in fact interferes with the easement rights. . . . Mandatory injunctions, for example an injunction to remove an obstruction on the easement, are not unusual where the facts warrant such relief.

1 Dan B. Dobbs, *Law of Remedies* § 7.7(6), at 785 (2d ed. 1993).

¶ 83    Under Colorado law, the traditional and preferred equitable remedy for a continuing trespass is a mandatory injunction requiring the removal of the encroachment. *Hunter v. Mansell*, 240 P.3d 469, 479 (Colo. App. 2010). An owner of a servient tenement has "no right for his own convenience or profit to change the location of a ditch, or to do anything which will interfere with the

vested rights" of a dominant tenement therein, without the consent of the benefited party. *Roaring Fork Club*, 36 P.3d at 1234 (quoting *Chirichigno v. Dickinson*, 63 Colo. 443, 445, 167 P. 1178, 1178 (1917)).

¶ 84  Rinker contends that the district court erred in imposing an affirmative obligation on him, rather than merely ordering him to remove the culvert, and in formulating a mandatory injunction that he asserts exceeds the scope of his obligations under the Agreement. We disagree.

¶ 85  The injunction cases Rinker cites are distinguishable. In *K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n*, 278 P.3d 372, 374 (Colo. App. 2011), a division of this court upheld an injunction that followed the parameters of a restrictive covenant prohibiting certain activities on the subject property. In contrast, *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 796 (Colo. App. 2001), *abrogated in part on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo. 2007), concerned the entry of an overbroad injunction that granted the plaintiff relief to which he was not entitled under his employment

agreement. We are not persuaded that the scope of the injunction in this case ran afoul of *K9Shrink* or *Atmel.*

¶ 86    The Agreement prohibits certain activities or conditions that damage or degrade Galena Court beyond normal wear and tear. We disagree with Rinker's assertion that the district court exceeded the scope of its authority when it ordered Rinker to unblock the culvert. The entry of the mandatory injunction was an appropriate remedy once the district court found that Rinker was blocking an easement. *See Hunter*, 240 P.3d at 479.

¶ 87    We perceive no distinction, other than a semantic one, between an injunction compelling Rinker to comply with the terms of the Agreement and an injunction requiring Rinker to unblock the culvert. Unlike the overbroad relief granted in *Atmel,* the district court here fashioned an injunctive remedy consistent with Rinker's obligations under the Agreement.

¶ 88    Accordingly, we conclude that the district court did not abuse its discretion in entering an injunction requiring Rinker to unblock the culvert.

## V. Conclusion

¶ 89 The judgment is affirmed.

JUDGE DAILEY and JUDGE FURMAN concur.